UNITED STATES v. FOWKES.[1]

*(District Court, E. D. Pennsylvania. January 5, 1892.)*

1. CRIMINAL LAW—REMOVAL OF PRISONER TO ANOTHER DISTRICT—EVIDENCE.
   Evidence which does not form the subject-matter of a defense, but merely tends to show that the indictment had been irregularly found, or that the offense charged could not have been committed by the prisoner, will be heard in his behalf in proceedings for warrant of removal, under Rev. St. § 1014.

2. SAME—DISCHARGE ON HABEAS CORPUS.
   Where a prisoner has been arrested on a warrant founded on an indictment found by a federal grand jury of a district in which he did not reside and was not found, which presumably had not been instructed by the court as to the constituents of the crime charged, and when there had been no previous arrest, hearing, or binding over, the court of the district in which the arrest is made will discharge the prisoner on *habeas corpus.*

*Habeas Corpus* by Frank W. Fowkes, relator, and motion to court for warrant of removal, under section 1014, Rev. St., commissioner's return 93, of 1891, of a prisoner committed by a commissioner on a warrant issued under an indictment found by the federal grand jury of the eastern division of the eastern district of Missouri, for offense against the interstate commerce act, (Act Cong. Feb. 4, 1887,) as amended March 2, 1889.

The indictment charged that the Wabash, the New York, Chicago & St. Louis, the Central of New Jersey, the Philadelphia & Reading, and the Delaware, Lackawanna & Western Railroads, each being a corporation, a common carrier, and engaged in the transportation of property wholly by railroad, under an agreement operated a continuous line from East St. Louis to Philadelphia; that they had established a joint tariff of rates for continuous carriage, and filed a copy thereof with the interstate commerce commission, for locomotive brakes, of 38½ cents per cwt.; and that certain named persons, acting for the several railroads,—among them, said Frank W. Fowkes, for the Philadelphia & Reading Railroad, —willfully charged, etc., and caused to be charged, etc., a less compensation than the joint tariff rates (31¼ cents per cwt.) to the American Brake Company for carrying locomotive brakes from East St. Louis to Philadelphia over their railroads. The second count of the indictment charged that said charge of less than tariff rates was willfully permitted, by means of a rebate allowed by said officials. The indictment had been found merely on presentation by district attorney, and without arrest or binding over. The prisoner was allowed to testify, and deposed that he was never in the state of Missouri; that his business was only to

---

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

adjust claims for overcharges; that he had no authority to make rates; but acknowledged that claims for overcharges of freight would come before him, and that he would sign vouchers for rebates for overcharges, but stated he had no memory of the transaction charged. Further testimony of the prisoner and another developed that the prisoner had no authority to allow any drawback which would make the freight less than the through tariff rates, though he could sign a "voucher," which would bind his railroad for the repayment of excessive rates, which was done by signing a "line voucher," which was signed in turn by an official of each road forming the through line, and authorized the initial road to repay the shipper the excess, charging each of the other roads with its quota. Prisoner discharged.

*John R. Read,* U. S. Atty.

*Thos. Hart,* for relator.

The judge, before the warrant of removal is asked, may go behind the indictment. *U. S.* v. *Rogers,* 23 Fed. Rep. 658; *In re Wolf,* 27 Fed. Rep. 606. And some cases ruled there must be other evidence than this indictment. *U. S.* v. *Martin,* 17 Fed. Rep. 150; *In re Burkhardt,* 33 Fed. Rep. 25. Where the indictment shows an impossible offense, it will not be followed. *U. S.* v. *Pope,* 24 Int. Rev. R. 290. The prisoner can produce evidence on his own behalf. *In re Buell,* 3 Dill. 116; *In re Mohr,* 73 Ala. 508.

BUTLER, District Judge. The relator, having been arrested and bound over to court, charged with the commission of a crime in the state of Missouri, sued out a writ of *habeas corpus;* and the district attorney, at the same time, applied for a warrant of removal. On return of the writ an indictment—found in Missouri—charging him with violation of section 10 of the interstate commerce statute, was presented, in justification of the arrest and detention. In answer, his counsel represented that the indictment was found without previous hearing, and that no hearing (except in form) has yet been allowed him; that no evidence can be produced to support the charge; that he has never been within the state of Missouri; that he has no connection with any other railroad than that of the Philadelphia & Reading Railroad Company, and that his connection with it when the indictment was found, and previously, conferred on him no authority whatever over the freight rates, or charges for transportation, and that he had never assumed or attempted to exercise such authority; that he was simply "freight claim agent" of the company, and that his duties as such consisted in passing upon claims—and certifying his conclusions— for compensation on account of erroneous exactions, in excess of established rates, and for loss of, or damage to, property received by the company for transportation. In view of these representations the relator was permitted to introduce evidence in support of them. The testimony heard, (the truth of which is not questioned, as I understand,) fully supports the representations. The case was held over for several weeks, to allow the government to produce evidence in support of the charge. None, however, has been produced.

·It is urged, on behalf of the prosecution, that the indictment itself is ·sufficient to require the detention and transfer of the relator, and that the court should not inquire further. This must be regarded as an appeal to the court's discretion. There can be no doubt of its authority to make such inquiry. The case is before us, not simply on the motion for a warrant of transfer, under section 1014 of the Revised Statutes, but ·under the writ of *habeas corpus;* and in such cases the court may treat an indictment as sufficient authority for holding the relator, or it may not, as the circumstances seem to require. Whenever there is cause to believe the detention improper, the court may, and should, inquire further. Under ordinary circumstances an indictment is treated as sufficient. Here, however, the circumstances are extraordinary. The indictment, ·as we have seen, was found at the instance of the prosecuting officer, without previous commitment or binding over; and the relator has, consequently, never had opportunity to know anything of the circumstances out of which the alleged crime is supposed to arise, or the nature of the ·evidence by which it is to be proved; and it is proposed to transfer him, under these circumstances, to a distant state for trial—while the undisputed testimony before me seems, at least, to justify belief, not only that ·he did not, but also that he could not, commit the offense charged in Missouri, or, indeed, elsewhere.

In view of the circumstances under which the indictment was· found, I do not regard it as entitled to any greater weight than a magistrate's ·commitment after hearing. I doubt whether it is entitled to as much. The practice pursued in obtaining indictments where there has been no commitment or binding over (which is so well understood that I must take judicial notice of it,) is to prepare the bill on information furnished, and, without communicating with the court, present it to the grand jury—which has not been instructed respecting the crime charged, and, presumably, is ignorant in many cases of its essential constituents. The ·government claims a right to pursue this practice, and I am not called upon to question it. When, however, indictments so obtained are presented as authority for imprisoning men, and transferring them to distant states to stand trial among strangers, the circumstances under which they are obtained must be considered in determining their value and effect. I think the jury's finding in such cases may be regarded as little more than matter of form. It is not improper to say, in passing, that the practice is, in my judgment, attended with serious danger to the rights ·of individuals, inasmuch as ·it affords convenient opportunity for the perversion of criminal process to the advancement of private interests. The cases of *In re Mohr,* 73 Ala. 508; *Jones* v. *Leonard,* 50 Iowa, 106; ·and *Wilcox* v. *Nolze,* 34 Ohio St. 520,—exhibit glaring instances of such perversion. In each it appears that the relator was arrested on an in-·dictment so procured, in a state distant from his home, charging the commission of crime there, without any evidence to justify the grand jury's finding—the object of the proceeding in each case being, manifestly, the ·extortion of money. It is not improper to say further, that, during my

experience several similar instances of the abuse of criminal process have come to my knowledge, and that, in one of the judicial districts of this state, the court was called upon by rule to provide that no such bill should be laid before the grand jury without its special permission, accompanied by *prima facie* evidence to support the charge, or the assurance of the prosecuting officer that he had personally investigated the case, and had such evidence to submit. The danger of abuse may be less in the federal courts; I do not know, however, that it is.

It was said, during the argument, that the practice referred to was, to some extent, departed from in procuring the indictment before me, but it was not said from personal knowledge. Without regard, however, to the circumstances under which indictments are found, the courts will go behind them whenever it appears that the relator's safety from unjust imprisonment requires it. The right to personal liberty is too important to be overborne by anything short of evidence that it has been forfeited. Mere matters of form, and considerations based on notions of comity between courts, have no proper place in trials on *habeas corpus.* In the case of *U. S.* v. *Rogers,* 23 Fed. Rep. 658, and *In re Buell,* 3 Dill. 116, the court went behind the indictment to ascertain whether an offense had been committed within the jurisdiction where it was found, as therein charged, and numerous similar cases might be cited. In *In re Mohr, supra; Hartman* v. *Aveline,* 63 Ind. 344; *Wilcox* v. *Nolze, supra;* and *Jones* v. *Leonard, supra,* the court went behind the governor's hearing and warrant of extradition, and inquired whether there was evidence to show that the crime charged had been committed where the indictment (on which the warrant issued) was found, as it averred. The court will not, of course, hear the relator's defense and try the case; it requires simply to be satisfied that there is evidence on which a jury may convict. In the case before me there is no evidence whatever produced on which a jury could proceed, notwithstanding the fact that the circumstances shown call for its production if any exist.

The suggestion that the government would be subjected to inconvenience and expense in producing evidence here, is entitled to no weight. The relator would be subjected to greater inconvenience and expense if held in custody, and transferred to Missouri to hear it. For these reasons the relator is discharged.