## Case No. 12,596.

SEAVEY v. SEYMOUR.

HARRINGTON v. SAME.

[3 Cliff. 439.] [1]

Circuit Court, D. Maine. Sept. Term, 1871.

HABEAS CORPUS—WHO MAY GRANT WRIT—ARMY—ENLISTMENT—WANT OF AGE—RETURN OF WRIT.

1. Under section 14 of the judiciary act [1 Stat. 81]. justices of the supreme court and district courts have power to grant writs of habeas corpus where a person is imprisoned or restrained of his liberty, for the purpose of inquiry into the cause of the commitment; but the writ in no case extends to prisoners in jail, unless when they are in custody under or by color of the authority of the United States. or are committed for trial before some court of the same, or are to be brought into a court to testify.

2. Under that act a circuit court has no authority to re-examine a decision of a district court.

3. The first section of the act of February 5, 1867 [14 Stat. 385], confers upon all the judges and justices of the courts of the United States, in addition to the authority previously conferred, power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution or any law or treaty of the United States, and

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

gives an appeal from the decision of an inferior to the circuit court.

[Cited in U. S. v. Hanchett, 18 Fed. 28.]

4. In case of the enlistment into the service of the United States, without the consent of parent or guardian, of a person under eighteen years of age, on a hearing under a petition for a writ of habeas corpus, parol evidence is admissible to show the age of the recruit.

5. The certificate of enlistment is not conclusive that the recruit was of age sufficient to enter into the contract.

6. The first proviso of section 20 of the act of February 24, 1864 [13 Stat. 10]. does not vest the exclusive jurisdiction of applications of this nature in the secretary of war.

7. If the recruit was under the age of eighteen years, his certificate under oath that he was of the age required for lawful enlistment, would not be conclusive as to the actual fact.

[Cited in Re Davison, 4 Fed. 509; s. c., 21 Fed. 622.]

8. The act of March 3. 1815 [3 Stat. 224], repealed the act of December 10, 1814 [Id. 146], which made the enlistment binding upon all persons under the age of twenty-one years as well as upon persons of full age.

9. By the act of the 24th of February. 1864, the secretary of war is empowered to order the discharge of all persons in the military service who are under the age of eighteen years at the time of the application for the discharge, provided it appears on due proof that such persons are in the service without the consent of parent or guardian, provided bounties, advance, etc., are first repaid to the government and the local authorities.

[Cited in Re Davison, 21 Fed. 623; Re Chapman, 37 Fed. 330.]

10. But this does not give the secretary of war exclusive jurisdiction of such applications.

11. This provision giving the secretary of war power to hear such applications, is not repugnant to, or a repeal of, section 14 of the judiciary act.

12. In order to work a repeal by implication there must be a positive repugnancy between the provisions of the older and later statute.

13. Upon an application for a writ of habeas corpus before the district court. there was no defence that the recruit was awaiting a trial under a charge of desertion before a military court. and no evidence to that effect introduced before that court: *Held*, that at the hearing of the appeal before the circuit court. the suggestion that that fact was shown by the return could not avail the respondent. because the jurisdiction of the circuit court in this case was purely appellate.

[Cited in U. S. v. Fowkes, 53 Fed. 14.]

14. The return on the writ should be signed by the person to whom it was directed.

15. The proper course is for the petitioner to make his answer to the return on the writ. and not to make his allegations in full in the petition.

[Appeal from the district court of the United States for the district of Maine.

[These were actions by John T. Seavey. father of John E. Seavey, against T. Seymour, military commander at Fort Preble. and William K. Harrington, father of Charles W. Harrington, against the same defendant. Heard on petitions for writ of habeas corpus.]

Strout and Gage, for petitioners.

T. F. Barr and A. B. Gardiner, for the United States.

CLIFFORD, Circuit Justice. Provision is made, by section 14 of the judiciary act, that either of the justices of the supreme court, as well as the judges of the district courts, shall have power to grant writs of habeas corpus "where a person is imprisoned, or restrained of his liberty," for the purpose of an inquiry into the cause of commitment; but the same section provides that the writ "shall in no case extend to prisoners in jail, unless when they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify." 1 Stat. 82.

Circuit courts, under that act, possess no power to re-examine a decision of the district court, as the act makes no provision for the removal of such a case from the district to the circuit court by writ of error or appeal; and the reported decisions of the circuit court do not show a case where appellate jurisdiction in such a case was ever exercised in a circuit court.

Appellate jurisdiction is exercised in such cases by the supreme court over the decisions of the circuit courts, as appears by many reported cases; but the circuit courts have never claimed to exercise the power to re-examine the decisions of the district courts in such cases under the judiciary act.

Tested by the regulations prescribed in that act, it is clear that the appeal before the court should be dismissed, as the circuit courts would possess no jurisdiction to re-examine the decisions of a district court in such a case; but section 1 of the act of the 5th of February, 1867, confers the power upon all of the justices and judges of the courts of the United States. in addition to the authority previously conferred, to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution. or of any treaty or law. of the United States; and the provision is, that, from the final decision of any judge, justice. or court inferior to the circuit court, an appeal in such case may be taken to the circuit court for the district in which said cause is heard, under the regulations prescribed in the same section. 14 Stat. 383.

Pursuant to that provision. the appellee, on the 10th of September, 1870, filed his petition under oath, in the district court for this district. praying that a writ of habeas corpus might issue in the case before the court, to bring into court the body of the person named in the petition, and that he, the person so named, might be discharged from his confinement.

He represented in his petition that he. the petitioner. was the father of the person so named; that his son was a minor under the age of eighteen years, and that he. the petitioner. was entitled to the custody and services of his son; that he. the son. was unlawfully imprisoned and restrained of his liberty

by the appellant at Fort Preble, in this district; that he, the petitioner, was informed that the appellant claimed to hold his son under and by virtue of a pretended enlistment into the army of the United States, but alleged that the enlistment, if any such is set up, is illegal and void, because, as he alleged, his son was at the time, and now is, a minor under the age of eighteen years, and not emancipated; and that he, the son, did not have the consent of the petitioner to the said enlistment. Return was made to the writ that the person named was held at the alleged place of confinement by reason of his being a regularly enlisted soldier in the army of the United States, and that he is also awaiting trial on a charge of desertion.

Express authority is given in the act to the petitioner to deny, under oath, any of the material facts set forth in the return, and to allege any fact to show that the detention is in contravention of the constitution, or any laws, of the United States. Hearing was had in the district court, and the district court decided that the enlistment of the person named in the petition was void, as it appeared that he was at the time of the hearing, as well as at the time of his enlistment, a minor under the age of eighteen years; and the district court entered an order or decree that the person so named be discharged from his said confinement.

Due appeal was thereupon taken from that decision of the district court to this court, and the appeal was duly entered at the last term. Since that time the parties have been heard, and the case now comes up for final determination. Certain irregularities are noticeable in the proceedings on the one side and the other; but the case will be examined and decided as if none such appeared, as they have been substantially waived by the parties.

Power to grant writs of habeas corpus is conferred upon the several justices and judges of the courts of the United States by section 1 of the act of 1867, in addition to their authority in that behalf under prior laws, in all cases where any person is restrained of his or her liberty in violation of the constitution, or of any treaty or law, of the United States; and it is clear that an appeal in all such cases, where the petition is commenced in the district court, will lie from the final decision of that court in the case to the circuit court of the United States for the district in which the cause was heard. Ex parte Yerger, 8 Wall. [75 U. S.] 102.

Justices and judges of the federal courts are empowered, by section 14 of the judiciary act, "to grant writs of habeas corpus for the purpose of inquiry into the cause of commitment"; but the additional power conferred by section 1 of the act under consideration is "to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law,

of the United States"; and the further provision is, that the court or judge granting the writ "shall proceed in a summary way to determine the facts of the case by hearing testimony and the arguments of the parties interested; and if it shall appear that the petitioner is deprived of his or her liberty in contravention of the constitution or laws of the United States, he or she shall forthwith be discharged and set at liberty." 14 Stat. 386; Ex parte Watkins, 3 Pet. [28 U. S.] 201; Ex parte Metzger, 5 How. [46 U. S.] 176; Hurd, Hab. Corp. 150.

Appeals to the circuit courts lie under that act from the final decisions of the district courts, but an appeal does not lie from the decision of the district court in such a case where the jurisdiction of the district court is derived solely from section 14 of the judiciary act.

Documents, purporting to be the original enlistment of the recruit, were introduced in each case, and they are so exactly alike in all particulars, which are material in this investigation, that a reference to one will be sufficient without any reference to the other. Take, for example, the enlistment of the recruit first named. He states his name, place of birth; that he is aged twenty-one years; also his occupation, and acknowledges that he voluntarily enlisted on the 6th of June, 1869, as a soldier in the army of the United States for the period of five years, unless sooner discharged by proper authority, and agrees to accept such bounty, pay, rations, and clothing as are or may be established by law. Superadded to that certificate of enlistment is the certificate of an oath purporting to have been taken by the recruit on the same day, in which he, as represented, does solemnly swear that he will bear true faith and allegiance to the United States; that he will serve them honestly and faithfully, and that he will observe and obey the orders of the president, and the orders of his superior officers.

Those documents are admitted to be genuine, but they do not contain any certificate that the recruits, or either of them, did, at the time of their enlistment, take and subscribe any oath as to their respective ages, as seems to be contemplated in such cases, by a recent act of congress. 12 Stat. 339. Appended to each document is a paper purporting to be a certificate of an oath, subsequently taken by the recruit, in which he certifies that he, at the time of his enlistment, was twenty-one years of age, but the United States do not contend that such certificates are a part of the enlistments, nor do they rely on them as conclusive evidence of what is therein certified.

On the contrary, they concede that the recruits respectively were, at the time of their enlistment, and that they still are, under the age of eighteen years, if evidence to that is admissible, which they deny, and insist that parol evidence is not admissible to prove that allegation.

Views diametrically opposite are entertained by the respective parties in this case, as appears by a comparison of the several propositions submitted by their counsel at the argument. Based on the state of facts here exhibited, the proposition of the petitioner is, that the enlistment of his son was in violation of section 2 of the act of the 13th of February, 1862, and void, as he was under the age of eighteen years, and that it was the duty of the district court to grant the writ of habeas corpus, and to discharge his son from his imprisonment.

Two principal answers are made by the government to that proposition, and if either of them can be sustained, the decision of the district court must be reversed. 1. That the evidence offered as to the age of the recruit at the time of his enlistment, is not admissible; that the certificate of enlistment, as given in evidence, is conclusive that the recruit was of sufficient age to make the contract. 12 Stat. 339. 2. That the first proviso in section 20 of the act of the 24th of February, 1864, operates to vest in the secretary of war the exclusive jurisdiction to hear and determine such an application. 13 Stat. 10; Id. 380.

Where the recruit is less than eighteen years of age, and was mustered into the military service without the consent of his parent, guardian, or master, proof to show that fact has always been admissible in evidence, except for the period of three months, as hereafter explained, from the organization of the judicial system of the United States to the present time, and it is still admissible under the rules of law, unless it can be held that the act which provides that "the oath of enlistment taken by the recruit shall be conclusive as to his age," has established a different rule. 12 Stat. 339.

Strong doubts are entertained whether that provision can have any application in any case where the writ of habeas corpus is sued out by the parent, guardian, or master, but it is unnecessary to determine that point in the case before the court, as it does not appear that the respective recruits did take any oath as to their age at the date of their enlistment. As before explained, they severally made oath that they would bear true faith and allegiance to the United States; that they would serve them honestly and faithfully, and that they would observe and obey the orders of the president and the orders of their superior officers; but they do not, as appears by the certificate of enlistment, make any representation under oath as to their respective ages.

Construed literally, the phrase that "the oath of enlistment taken by the recruit shall be conclusive as to his age," it may be conceded, would afford some support to the theory of the respondent, that the evidence offered to show that the recruits were under eighteen years of age, was inadmissible, but it cannot be admitted that congress intended to enact that the enlistment, with or without such a certificate, should be conclusive evidence that

a given relation exists between the United States and a citizen, when the same section of the act of congress enacts that the party in question shall never hold any such relation as that imputed.

Even suppose the phrase in question may be construed as enacting in respect to recruits between the ages of eighteen and twenty-one, that the enlistment shall be conclusive that they were competent to make such a contract, which is not admitted where the petition is filed by the parent, guardian, or master; still it is clear that it cannot properly be so construed in respect to recruits under the age of eighteen years, as the same section enacts, "that no person, under the age of eighteen, shall be mustered into the service of the United States."

Congress, in the opinion of the court, could never have intended to enact that the certificate of enlistment should be conclusive as to the validity of the contract, in a case where the recruit is declared not competent to be mustered into the military service, by the same section that contains the provision which it is supposed excludes the evidence to prove its invalidity. Such a construction, if not positively absurd, would certainly violate one of the acknowledged canons of construction, which forbids that any part of a statute shall be held to be without meaning, as it is clear that that consequence must follow if such a view is adopted as to the meaning of that phrase.

Support to the opposite view is also derived from the consideration, that if the rule assumed by the respondent may be applied where the recruit is under the age of eighteen, it may, with equal propriety, be applied when the enlistment is of a recruit under sixteen years of age, in which case the recruiting or mustering officer, if he acted knowingly, is liable to be dismissed the service, with forfeiture of pay and allowances, and "shall be subject to such further punishment as a court martial may direct." 13 Stat. 380.

Recruits, it seems, are sometimes required to make oath as to their age at the time of their enlistment, and sometimes they are not, as is sufficiently shown by the enlistments and the certificates appended to the same, in these cases. Attempt was made in argument to show that the enlistment never contains any such statement of the recruit, but the reports of judicial decisions furnish satisfactory evidence to the contrary, as appears by several cases. In re Cline [Case No. 2,896]; In re Stokes [Id. 13,474]; In re Riley [Id. 11,834].

Evidently the enlistment cannot, in any case, be regarded as conclusive of the age of the recruit unless it contains the certificate of the recruit under oath that he was of the required age, and the court is of the opinion that even where it contains such a certificate it cannot have the effect to exclude evidence as to the actual fact, if the recruit was under the age of eighteen years at the time of his enlistment, as the same section provides "that no

person under the age of eighteen shall be mustered into the United States service."

Express provision is made by section 11 of the act of March 16, 1802, that no person under the age of twenty-one years should be "enlisted or held" in military service without the consent of his parent, guardian, or master, if any he had, and the same section enacted that if any officer should enlist any person contrary to the true intent and meaning of that act, he should be liable to the penalty therein provided. 2 Stat. 135. Many changes were subsequently made in the details of that regulation, and especially during the war of 1812, not material to be noticed, as one of them contains a re-enactment of the substance of the original provision, and no one of them authorized the enlistment of a minor under the age of eighteen without the consent of the parent, guardian, or master, until the act of the 10th of December, 1814, was passed, which was approved only fourteen days before the treaty of peace was signed. 3 Stat. 146; 8 Stat. 218; 2 Stat. 792.

Consent in writing of the parent, guardian, or master, was required by the act last referred to, which was a supplementary act for the more perfect organization of the army during that war. Throughout that period it is clear that persons under the age of eighteen could not be enlisted or held to service in the army without the consent, oral or written, of the parent, guardian, or master; but section 1 of the act, making further provision for filling the ranks of the army, authorized commissioned officers in the recruiting service to enlist into the army any free, effective, able-bodied men between the ages of eighteen and fifty years, and the provision was that the enlistment should be absolute and binding upon persons under the age of twenty-one years, as well as upon persons of full age, where it appeared that the recruiting officer had complied with all the requisitions of the laws regulating the recruiting service. 3 Stat. 146. Provision was also made by section 3 of the act, that so much of section 5 of the prior act as required the consent in writing of the parent, guardian, or master to authorize the enlistment of persons under the age of twenty-one years, "shall be, and the same is hereby, repealed." Such consent in writing, after that, was certainly no longer necessary, and perhaps the better opinion is, that persons under the age of twenty-one years might be enlisted into the army under that act without any such consent, oral or written, as that required under prior laws. Concede all that, still it is clear, as is expressly admitted by the respondent, that the act repealing the provision requiring such consent was itself repealed by section 7 of the act fixing the military peace establishment, which became a law in less than three months after the provision in question was repealed. 3 Stat. 225.

War had then terminated, and congress proceeded without delay to reduce the army, as the congress on the 16th of March, 1802, had previously done, re-enacting many of the provisions of the former law, and prefixing the same title to the new act. By section 1 of that act it was provided, that the military peace establishment should consist of such proportions of artillery, infantry, and riflemen, not exceeding in the whole ten thousand men, as the president should judge proper, and that the corps of engineers as then established should be retained.

Section 4 of the same act prescribes the compensation, subsistence, allowance, etc., of the officers, non-commissioned officers, privates, etc., in the new military peace establishment, and provides in express terms that they shall be the same, except in certain particulars not material to be noticed, as are prescribed in the old law upon that subject. All the corps retained by that act were declared "to be subject to the rules and articles of war," and section 7 provides that "they shall be recruited in the same manner, and with the same limitations . . . . as are authorized" by the before-mentioned old law upon the same subject, and the act to raise for a limited time an additional military force. 2 Stat. 481.

Nothing can be plainer than the proposition that the new act fixing the military peace establishment of the 3d of March, 1815, repealed that part of section 1 of the act of the 10th of December, 1814, which made the enlistment absolute and binding upon all persons under the age of twenty-one years, as well as upon persons of full age.

Were counsel permitted to re-argue the case, it might perhaps be suggested that the court, in the Case of Riley [Case No. 11,834], decided that the act of the 10th of December, 1814, is still in force and unrepealed; but it would be a sufficient answer to that suggestion, if made, that the court, though it gave a pretty thorough review of the acts of congress upon the subject, did not refer to the act of the 3d of March, 1815, which is the repealing act, as is admitted by the counsel for the respondent.

Obliged to concede that the act of the 10th of December, 1814, was repealed by the act of the 3d of March, 1815, the next proposition of the appellant is that the latter act was also repealed by subsequent acts of congress. Support to that proposition is attempted to be drawn from the act of the 2d of March, 1821, and from the act of the 2d of March, 1833, the act of the 23d of May, 1836, and the act of the 5th of July, 1838, but it is so obvious that the proposition finds no such support as is supposed from anything contained in any one of those acts of congress, or from the whole combined, that it is not deemed necessary to reproduce any of their provisions. 3 Stat. 615; 4 Stat. 647; 5 Stat. 32; Id. 256.

Attention is also called to three opinions of the attorneys general, but the inquiries presented in those cases were widely different from the one before the court, and it is quite evident that the particular question involved

in this proposition was not examined at all in either of those cases. 5 Op. Attys. Gen. U. S. 313; 6 Op. Attys. Gen. U. S. 474; Id. 607.

Power was conferred upon the secretary of war, by section 5 of the act of the 28th of September, 1850, to order the discharge of any soldier of the army of the United States who, at the time of his enlistment, was under the age of twenty-one years, upon evidence being produced to him that such enlistment was without the consent of his parent, guardian, or master; but it is too clear for argument that that provision did not have the effect to repeal or modify section 14 of the judiciary act. 9 Stat. 507.

Express authority is also conferred upon the secretary of war by section 20 of the act of the 24th of February, 1864, to "order the discharge of all persons in the military service who are under the age of eighteen years at the time of the application for their discharge, when it shall appear, upon due proof, that such persons are in the service without the consent, either express or implied, of their parents or guardians," provided the applicant, his parent or guardian, shall first repay to the government, and to the state and local authorities, all bounties and advance pay received by him in consequence of his enlistment. 13 Stat. 10.

"May order the discharge," etc., are the words of that provision, but congress subsequently enacted that it should be construed to mean that the secretary of war "shall discharge minors under the age of eighteen years under the circumstances and on the conditions prescribed in section 20 of the former act." Id. 380.

Military officers are forbidden, by the same section of the act just named, to enlist or muster into the service any person under the age of sixteen years, with or without the consent of the parent or guardian; and the further provision is, that such person, if so enlisted or recruited, shall be immediately discharged upon repayment of all bounties received, and that such recruiting or mustering officer who shall knowingly enlist any person under sixteen years of age, shall be discharged the service, with forfeiture of pay and allowances, and shall be subject to such further punishment as a court-martial may direct.

Beyond all doubt the effect of that enactment is to make it the duty of the secretary of war, under the circumstances and on the conditions prescribed, to discharge such persons who are under the age of eighteen years at the time of their application, when it shall appear, upon due proof, that such persons are in the military service without the consent, either express or implied, of their parents or guardians, as provided in the former act, and the appellant contends that it vests in the secretary of war the exclusive jurisdiction to hear and determine such an application, but the court is entirely of a different opinion.

Important and inalienable liberties and privileges were either granted or secured to every order of men in the parent country, by the great charter, whose crowning glories are those essential clauses which protect the personal liberty and property of all the citizens, by giving security from arbitrary imprisonment, and from forcible spoliation, without due process of law.

Centuries afterward, the declaratory statute, called the petition of right, was passed, by which it was designed to subject even the sovereign to the power of the law, and bring the right of personal liberty within legal protection, and to afford additional guarantees against arrest without due process, illegal restraints, and arbitrary commitments.

Special reference ought also to be made to another fundamental statute which, with the two others previously mentioned, constitute the constitutional safeguards of personal liberty in the parent country. Prior to that enactment the courts had decided they could not upon habeas corpus either bail or deliver a prisoner, though committed without any cause assigned, in case he was committed by the special command of the king, or by the lords of the privy council. 3 Bl Comm. 134.

Indignant at such a decision, the parliament enacted that any person committed even though by the king himself, in person, or by his privy council, should have granted unto him, without any delay upon any pretence whatsoever, a writ of habeas corpus, upon demand or motion made to the court of king's bench or common pleas, and that thereupon the court, within three court days after the return is made, should examine and determine the legality of such commitment, and should do what to justice might appertain in delivering, bailing, or remanding such prisoner. 3 Bl. Comm. 135.

Throughout that period, however, notwithstanding the errors of judicial decisions, and the culpable delays in the administration of justice, the writ of habeas corpus was the chief if not the only reliance of the citizen against illegal restraint and unlawful imprisonment.

Partial remedy for such evils in judicial administration was provided by the statute just referred to, which gave the courts jurisdiction, even though the commitment was made by the king or privy council, but other abuses had also crept into daily practice, which had in some measure defeated the benefit of that great constitutional remedy.

Judicial errors of the kind mentioned, when committed at a still later period, had the effect to arouse parliament a second time to a sense of the incalculable importance of that essential safeguard of civil liberty, which finally led to the enactment of the statute ever since known as the "Habeas Corpus Act," and as the second great charter of that country for the protection of the

citizen from unlawful imprisonment, and the aggressions of arbitrary power.

Reference is here made to judicial decisions and parliamentary acts, which preceded even the discovery of our own country; but when our ancestors immigrated here they brought with them, as a part of the common law, those great and essential guaranties and safeguards of civil liberty against unlawful imprisonment and arrest, without due process of law. They claimed the full possession of the rights, liberties, and immunities of British subjects, and, in their early legislative assemblies, insisted upon a declaratory act, acknowledging and confirming such rights, liberties, and immunities. 1 Story, Const. (3d Ed.) § 165; Ancient Char. 43, 214.

Guaranties and safeguards equally effectual are also found in the constitution of Massachusetts adopted in 1780, before the convention assembled which framed the federal constitution. Gen. St. Mass. 15–31.

When the constitution was ordained, it was declared by the framers that one of the purposes for which it was established was to secure the blessings of liberty; and it also provides that the privilege of habeas corpus shall not be suspended unless when in cases of rebellion or invasion the public safety may require it; that the trial of all cases of impeachment shall be by jury; that no person shall be held for a capital, or otherwise infamous, crime, unless on a presentment of a grand jury, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. Very strong doubts are entertained whether congress could constitutionally pass a law giving the exclusive power to the secretary of war to hear and determine such cases as those mentioned in the petitions before the court; but it is quite unnecessary to determine that question, as the court is of the opinion that the provision which requires the secretary of war to discharge such persons, when application is made to him, is in no respect repugnant to section 14 of the judiciary act.

Decided cases are referred to which give some support to the opposite theory; but it is not deemed necessary to give them much examination, as the question, in the judgment of the court, must turn upon the construction of the two acts of congress previously mentioned, when considered in connection with the act under which the petitions in this case were filed. Applications for discharge in such cases may be made by such minors to the secretary of war; and the provision is, that he shall order a discharge if it appears upon due proof that the applicant is in the military service without the consent, either express or implied, of his parent or guardian; but there is not a word in the section to show that the parent or guardian may not apply to the associate justice of the supreme court, or to the circuit judge, or to the district judge for the district, for the same relief which the secretary of war may grant.

Repeals by implication are never favored. On the contrary, the rule is that there must be a positive repugnancy between the provisions of the new law and the old to work a repeal by implication, and even then the old law is only repealed to the extent of such repugnancy. Wood v. U. S., 16 Pet. [41 U. S.] 363; U. S. v. Walker, 22 How. [63 U. S.] 311; 2 Dwar. St. 533.

Suppose it was otherwise, and that the theory that the authority given to the secretary of war to discharge such minors is inconsistent with section 14 of the judiciary act, still the conclusion would not benefit the appellant, as the petitions in these cases were filed under the act passed three years subsequent to the act which gives that authority to the secretary of war; and, by the act last mentioned, power to grant writs of habeas corpus, in all cases where any person may be restrained of his or her liberty in violation of the constitution or any treaty or law of the United States, is expressly given to the several courts of the United States, and to the several justices and judges of such courts, within their respective jurisdictions, in addition to the authority conferred by the prior acts of congress. 14 Stat. 385.

Such an enactment evidently contemplates a judicial remedy, and indeed the writ of habeas corpus is everywhere regarded as a judicial writ, and the only one which is designed to procure liberation from illegal confinement. By all the forms, the writ is directed to the person detaining another, and commands the person to whom it is directed to produce the body of the prisoner, or person detained, together with the day and cause of his capture and detention, to submit to and receive whatsoever the court or judge awarding the writ may determine in that behalf.

Grant that, and it is still insisted by the appellant that the decree of the district court discharging the petitioners is erroneous, because the return shows that the petitioners are awaiting trial as deserters; but the decisive answer to that objection is, that no such defence was set up in the district court, nor was any evidence introduced in that court to support the allegation of the return.

Where the petition is filed and the case heard in the district court, the case can only be removed into the circuit court by appeal, and in that state of the case the jurisdiction of the circuit court is wholly appellate.

Power to re-examine the decree of the district court is all the power in such a case which is possessed by the circuit court; and such re-examination must be made upon the same evidence as that introduced in the district court, except in case where competent evidence was offered and excluded which should have been admitted. Errors of the

district court may be corrected; but it was not the intention of congress, in providing for an appeal, to give the party a new trial, unless the same should be ordered by the appellate court for some error committed by the district court.

Two irregularities are noticed in the proceedings which were not the subject of remark by either party at the hearing. Subsequently they were discovered by the court, and the attention of counsel was invited to the subject, with leave to each party to file an additional brief. Since that time, briefs on the one side and on the other have been received, and the subject attentively considered.

One of the errors is in respect to the return, which is not signed by the person to whom the writ is directed, nor does it contain any explanation in that behalf. Probably the returning officer is the commanding officer of the military post, and the proper one to make the return, but the necessity for any further inquiry into the matter is obviated by the waiver of the objection by the petitioners.

Petitioners in such a case may deny any of the material facts set forth in the return, or they may allege any fact to show that the detention is in contravention of the constitution or the laws of the United States. Instead of waiting till the return was made, and then making their answer to it, they set forth their response to it in their petition, but inasmuch as the allegations of the petitions are full and explicit to the point, and are also under oath, the court is of the opinion that the objection ought not to prevail in the appellate court, especially as it was not made in the district court, nor in the circuit court, until the attention of counsel, subsequent to the hearing, was called to it by the appellate court.

The decrees of the district court are respectively affirmed.