## UNITED STATES v. FOWKES.

(Circuit Court of Appeals, Third Circuit. November 10, 1892.)

1. CIRCUIT COURT OF APPEALS—JURISDICTION—HABEAS CORPUS.
    Under Act March 3, 1891, §§ 4-6, the circuit courts of appeals have succeeded to the appellate jurisdiction of the circuit courts under Rev. St. § 763, for reviewing habeas corpus proceedings in the district courts.

2. CIRCUIT COURTS—APPELLATE JURISDICTION—HABEAS CORPUS—OFFENSES UNDER INTERSTATE COMMERCE ACT.
    Under Rev. St. § 763, the circuit court had appellate jurisdiction to review a decision of the district court, releasing, on habeas corpus, a person arrested in Pennsylvania for violation of the interstate commerce act, and held for removal to Missouri to answer to an indictment there found. Seavey v. Seymour, 3 Cliff. 439, followed.

3. INTERSTATE COMMERCE ACT—VENUE OF OFFENSES.
    The signing of a "line voucher" by a freight claim agent at Philadelphia, in the third circuit, relating to the payment of freight in the eighth circuit, if an offense punishable under section 10 of the interstate commerce act, is not begun in one judicial circuit and completed in another, within the meaning of Rev. St. § 731, and is therefore not cognizable in a district court in the eighth circuit. In re Palliser, 10 Sup. Ct. Rep. 1034, 136 U. S. 257, and Horner v. U. S., 12 Sup. Ct. Rep. 407, 143 U. S. 207, distinguished.

4. CRIMINAL LAW—REMOVAL TO ANOTHER DISTRICT FOR TRIAL—OFFENSES UNDER INTERSTATE COMMERCE ACT—HABEAS CORPUS—EVIDENCE.
    Under Rev. St. § 1014, providing for the arrest of offenders, and their removal to such federal courts as have cognizance of their offenses, a person arrested in Pennsylvania merely on the strength of an indictment found in a federal district court in Missouri for violation of the interstate commerce act can, on application for habeas corpus, and for a warrant of removal to such court, introduce evidence to prove that the act alleged as an offense was completed in Pennsylvania, and is therefore not cognizable in the federal court in Missouri. 49 Fed. Rep. 50, affirmed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Applications by the United States for a warrant of removal of Frank W. Fowkes from the district court for the eastern district of Pennsylvania to the district court for the eastern division of the eastern district of Missouri, and by the prisoner for habeas corpus. The district court denied the warrant, and discharged the prisoner. 49 Fed. Rep. 50. The United States appeal. Affirmed.

Robert Ralston, Asst. U. S. Atty., and Ellery P. Ingham, U. S. Atty., for the United States.

Thomas Hart, Jr., for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

DALLAS, Circuit Judge. This was an application made on behalf of the United States to the United States district court for the

eastern district of Pennsylvania, for a warrant for the removal of the appellee to the eastern division of the eastern judicial district of Missouri. At the same time the appellee, who had been committed by the commissioner to the custody of the marshal, presented his petition to the same court for a writ of habeas corpus, which was allowed, issued, and returned forthwith. Under this writ the relator was, after hearing, discharged, and thereupon this appeal was taken from that order, as well as in the matter of the application for a warrant of removal. The assignments of error relate to both proceedings as practically constituting a single matter, and the whole case may be disposed of here, as it was by the district court, with reference to the habeas corpus; for, of course, if the appellee was entitled to discharge under that writ, no warrant for his further detention could have been properly issued. It is not necessary to consider the several assignments in detail. The material points presented may be disposed of by determining the answers which should be made to the two general questions to which the arguments of counsel have been directed: First. Has this court jurisdiction of this appeal? Second. Was there error in the discharge of the appellee, in view of the facts and circumstances of this case?

1. The act of congress of March 3, 1891, which created the several circuit courts of appeals, provides (section 4) that no appeal shall hereafter be allowed from any district court to the existing circuit courts, but that "all appeals, by writ of error or otherwise, from said district courts, shall only be subject to review in the supreme court of the United States or in the circuit courts of appeals, hereby established, as is hereinafter provided." Section 6 of the same statute provides that the circuit courts of appeals shall exercise appellate jurisdiction to review final decisions in the district courts, other than those provided for in the fifth section, unless otherwise provided by law. The present case is not included among those which are provided for by the fifth section, and there is no other provision of law affecting the subject. Hence it is clear that, if an appeal in such a case as this could, before the creation of this court, have been taken to the circuit court for this circuit, the present case is now cognizable by this tribunal as the lawful successor of that court with respect to such appellate jurisdiction. McLish v. Roff, 141 U. S. 661, 666, 12 Sup. Ct. Rep. 118; Lau Ow Bew v. U. S., 144 U. S. 47, 56, 12 Sup. Ct. Rep. 517. Entertaining this view of the matter, we have made investigation as to the jurisdiction of the circuit courts in such cases prior to March, 1891, and find that it existed. The question presented itself, and was judicially answered in a manner which accords with our judgment, in the case of Seavey v. Seymour, 3 Cliff. 439. See, also, Ex parte Yerger, 8 Wall. 85, and Rev. St. § 763.

2. The appellee was in the custody of an officer of the United States, under color of a law of the United States. His detention was alleged to be justified solely by section 1014 of the Revised Statutes, which provides for the arrest and imprisonment of offenders only "for any crime or offense against the United States, * * * for trial before such court of the United States as by law has cognizance of the offense." The court alleged to have such cognizance in this case is a

district court of the United States in Missouri. If he had committed a crime against the United States, and if the district court referred to did have cognizance of it, the prisoner was, of course, lawfully held; but, if either of these facts did not exist, then his imprisonment, being without the sanction of the only law of the United States relied upon for its justification, was violative of that law. Seavey v. Seymour, supra. It follows from what has been said that it was the duty of the district court, making "inquiry into the cause of restraint of liberty" (Rev. St. § 752) in the case of the relator, who alleged that he was in custody in violation of law, to direct that inquiry to the matters we have alluded to as relevant to the issue joined upon that allegation. Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. Rep. 407. Of this there can be no doubt; and, indeed, we do not understand that the learned district attorney has questioned the soundness of this general proposition, thus broadly stated, but that his contention relates only to the character of the inquiry which should be made and the extent to which it should be carried. The position taken on behalf of the United States is that the district court could not look beyond the indictment and the action of the commissioner by whom the relator had been committed; and this position was adhered to throughout the proceedings in that court, notwithstanding the fact that ample opportunity was afforded the appellant to produce evidence to refute that which was presented on behalf of the appellee. We, however, cannot sustain this view of the law. We do not doubt that a district court may, in its discretion, and in a proper case, order a warrant of removal upon the indictment alone; but it would be going much further, and much too far, as we think, to hold that in all cases, and especially in such a case as this record discloses, the judge is precluded from hearing any other evidence whatever, and must, upon mere inspection of the indictment, order the removal of the accused person to a considerable distance for trial, although evidence be offered which, if received, would conclusively establish that the court to which it is asked that he shall be remanded is without jurisdiction to try him.

We must not be understood as deciding that upon an application for a warrant under section 1014 of the Revised Statutes it is the duty of, or would be proper for, the court to enter upon an inquiry in the nature of a trial to determine the guilt or innocence of the accused. The learned judge of the district court did not do so in this case; but, in the exercise of a sound discretion, and with reference to the special circumstances stated in his opinion, he—properly viewing the function which he was called upon to exercise as a judicial, and not as a merely ministerial, one—simply refused to grant a warrant in despite of proof that a condition prescribed by the statute was nonexistent. It must be assumed that the power to issue a warrant was confided to the judge, instead of to the commissioner, not without reason; and what good reason can be assigned for the interposition of a judge at all if not for the purpose of securing to a person threatened with compulsory removal a judicial determination that such deprivation of his liberty will not be permitted "without due process of law?" The course which the learned judge pursued was necessitated by the just application of essential principles of liberty in the administration

of this statute, and it is supported by the considerately adopted practice of other of the courts of the United States in similar cases; among others, in U. S. v. Brawner, 7 Fed. Rep. 86; In re James, 18 Fed. Rep. 853; U. S. v. Rogers, 23 Fed. Rep. 658; In re Wolf, 27 Fed. Rep. 606; In re Terrell, 51 Fed. Rep. 213. The court, as already remarked, did not try the case, but the learned judge did require that he should be satisfied, before he would deprive the relator of his personal liberty, and order his transfer to a distant state for trial, that there was evidence on which a jury might convict in that state. Yet no evidence whatever was offered on behalf of the government, and the only question which remains is as to whether the circumstances alleged and proved by the appellee justified the requirement that some evidence should be produced by the appellant. As was said by the learned judge, the circumstances were extraordinary. After a careful examination of the record, we adopt his statement of them:

"The relator, having been arrested and bound over to court, charged with the commission of crime in the state of Missouri, sued out a writ of habeas corpus, and the district attorney at the same time applied for a warrant of removal. On return of the writ, an indictment—found in Missouri—charging him with violation of section 10 of the interstate commerce statute was presented in justification of the arrest and detention. In answer, his counsel represented that the indictment was found without previous hearing, and that no hearing (except in form) has yet been allowed him; that no evidence can be produced to support the charge; that he has never been within the state of Missouri; that he has no connection with any other railroad than that of the Philadelphia & Reading Railroad Company, and that his connection with it, when the indictment was found, and previously, conferred on him no authority whatever over the freight rates or charges for transportation, and that he never assumed, or attempted to exercise such authority; that he was simply 'freight claim agent' of the company, and that his duties as such consisted in passing upon claims, and certifying his conclusions, for compensation on account of erroneous exactions in excess of the established rates, and for loss of or damage to property received by the company for transportation. In view of these representations, the relator was permitted to introduce evidence in support of them. The testimony heard (the truth of which is not questioned, as I understand) fully supports the representations. The case was held over for several weeks to allow the prosecutor to produce evidence in support of the charge. None, however, has been produced."

It was under, and in view of, these circumstances that the district court here conceived it to be its duty to inquire for itself, and notwithstanding the indictment, as to whether the court in Missouri had "cognizance of the offense." To this point the investigation was directed, and upon the result of that investigation the judgment appealed from was based. What was the result of that investigation? It was that, if "any crime or offense against the United States" had been committed, (which we need not, and therefore do not, decide,) it is certain that none could have been committed of which the United States court in Missouri had cognizance. The accused had never been within that state. This fact is unquestioned; but it has been argued that the offense charged, though begun in the third circuit, was completed in the eighth circuit, and that, therefore, under section 731 of the Revised Statutes, it might be tried in either. In our opinion, however, the facts of this case do not bring it within the terms or operation of that section.

The appellee was indicted, under the tenth section of the interstate commerce act, for that he (with certain other persons named) "did

then, at said division of said district, (first count,) unlawfully and willfully charge to, and demand of, and collect and receive from, and did then and there unlawfully and willfully cause to be charged to, and demanded of, and collected and received from, and did then and there unlawfully and willingly permit to be charged to, and demanded of, and collected and received from, the American Brake Company, a corporation, less compensation than was then and there specified in the schedule and said joint tariffs of rates and charges, filed as aforesaid, and in force at that time," etc. (Second count:) "Unlawfully, feloniously, and willfully, directly and indirectly, by a special rebate and drawback, charge to, and demand of, and collect and receive from, and cause to be charged to, and demanded of, and collected and received from, and willfully permit to be charged to, and demanded of, and collected and received from, the American Brake Company," unlawfully and unjustly discriminating charges.

The appellee was simply the freight claim agent of the Philadelphia & Reading Railroad Company. As such agent, all that it was competent for him to do in or about the transaction averred to be criminal was the signing of a "line voucher," and the evidence was to the effect that no voucher which he had any authority to sign could have operated as an allowance of a claim for rebate from the schedule rate. If it be assumed, however, that he did sign an instrument which permitted an unlawful act, yet it is beyond question that whatever he did was done in Pennsylvania, and that his offense, if any, was both begun and completed in that state; and that he did not elsewhere, in any manner, charge, demand, collect, or receive, or cause or permit to be charged, demanded, collected, or received, from any person whatever, an unlawful compensation for the carriage or shipment of property, as in the indictment is alleged. This case differs materially, as to the facts affecting the point under consideration, from those cited in argument. In re Palliser, 136 U. S. 257, 10 Sup. Ct. Rep. 1034, was a case in which the offense charged was an offer of money, or a tender of a contract for the payment of money, contained in a letter mailed in New York, and addressed to a postmaster in Connecticut, to induce him to violate his official duty, and it was held that the offense continued to be committed in Connecticut. The letter, it will be observed, was mailed directly to, and was received by, the postmaster in Connecticut; and the only doubt intimated by the supreme court was as to whether the offense was at all committed before the unlawful proposal became known to the person to whom it was addressed. Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. Rep. 407, was decided under a statute making it an offense to cause lottery circulars to be delivered by mail. The delivery occurred in Illinois, and the offense was, therefore, held (citing In re Palliser) to be triable there. It is necessary only to compare the facts of these cases with that now before this court in order to perceive the differences which distinguish them from it. In the present case, the utmost that, under the evidence, can be attributed to the appellee, is that he signed at Philadelphia a paper which was not addressed or delivered to the person whom it is said to have unlawfully favored, but, in pursuance of which, another person did, or was authorized to do, a wholly inde-

pendent and distinct thing, namely, to pay a sum of money, and at another place.

We are of opinion that, under the circumstances of this case, no error was committed in requiring evidence, other than the indictment itself, that the court in Missouri had cognizance of the offense alleged, or in discharging the prisoner, upon the failure of the government to comply with that requirement. Therefore the judgment is affirmed.