### In re HUNTINGTON.

(District Court, S. D. New York. May 7, 1895.)

CRIMINAL LAW—REMOVAL OF OFFENDERS—SECTION 1014, REV. ST.—INSUFFICIENCY OF INDICTMENT—FREE PASSES—ACT FEB. 4, 1887.

The act of February 4, 1887, forbidding certain preferences, means preferences in transportation of persons or property. An indictment alleging only the issue of a free written pass, but not alleging any use of the pass, or of transportation under it, is fatally defective in substance, and therefore not a sufficient basis for removal under section 1014, Rev. St.

This was an application for a warrant for the removal of C. P. Huntington to California for trial upon an indictment charging him

with issuing a free pass for railroad transportation contrary to the interstate commerce law.

Wallace Macfarlane, U. S. Dist. Atty., for the United States.

Coudert Bros. and Maxwell Evarts, for defendant.

BROWN, District Judge. Application is made under section 1014, Rev. St. U: S., for the removal of Mr. Huntington to California for trial upon an indictment found there on January 10, 1894, for issuing to Frank M. Stone in California, in violation of the act of February 4, 1887 (24 Stat. 379), a "free pass" in the following words: "Southern Pacific Company: Pass Frank M. Stone over lines of the Southern Pacific Company 1894 until December 31, unless otherwise ordered."

The indictment charges that by this free pass the defendant did willfully and unlawfully, and knowingly, make and give an "undue and unreasonable preference and advantage" to said Stone; that the pass was delivered to him and remained in his possession in full force and effect until December 26, 1894, and that it was the intent of the defendant in issuing the pass to give said Stone unlimited privilege and opportunity "to travel without charge or compensation over all the lines of the Southern Pacific Company"; and that he was not one of the persons mentioned in the amendment to section 22 of said act by the act of March 2, 1889 (25 Stat. 855), to whom the act was not to apply.

The application for removal must be denied, on the ground that the indictment is fatally defective in not averring that any use was ever made of the pass, or that any transportation was ever furnished under it. Where the indictment is bad in substance, no removal will be granted. In re Doig, 4 Fed. 193; and see U. S. v. Fowkes, 49 Fed. 50, affirmed 53 Fed. 13, 3 C. C. A. 394; In re Terrell, 51 Fed. 213.

The various provisions of the act itself, and the rulings and adjudications of the interstate commerce commission, leave no doubt whatsoever that the act is intended to deal with transportation; and that nothing in the act makes criminal the mere issue of free tickets or passes that are never used. The indictment is drawn under the third section of the act, which provides: that "it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person or any particular description of traffic * * * or to subject any person or any particular description of traffic * * * to any undue or unreasonable prejudice or disadvantage." The subject of the "preference" or "prejudice" is transportation of either persons or property. The act nowhere in terms prohibits the mere issuing of free tickets, or free passes. A free ticket or a free pass not used is not transportation; it is not a preference or advantage to the holder, nor any prejudice or disadvantage to others. This precise point was so adjudged by the interstate commerce commission in the case of Griffee v. Railroad Co., 2 Interst. Commerce Com. R. (No. 137) 301. In that case an ex-employé was furnished a free pass, which on the hearing of the com-

plaint it appeared had not been used. Commissioner Schoonmaker, in dismissing the complaint, says: "On these facts a contravention of the statute has not been shown; * * * confessedly there was no transportation under the pass; nothing whatever was done under it," and the complaint was dismissed. No different adjudication, so far as I have found, has ever been made. A preference in transportation, is, therefore, of the essence of the offense. Every indictment must allege the necessary ingredients of the crime charged, or it is insufficient for putting the accused on trial. U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571. "Before a man can be punished, his case must be plainly and unmistakably within the statute;" and the indictment must show it to be so. U. S. v. Lacher, 134 U. S. 624, 628, 10 Sup. Ct. 625; U. S. v. Brewer, 139 U. S. 278, 288, 11 Sup. Ct. 538. The issuing of a free pass for purposes not allowable, is doubtless prima facie evidence of an intent to furnish unlawfully free transportation; but there is nothing in the act that makes criminal the intent alone, or the mere issuing of a free pass without any actual transportation under it. The cases cited by the government from the reports of the interstate commerce commission show, on examination, that they are all dealing with "free carriage," and "free transportation," not with free tickets alone. See In re Boston & M. R. Co., 5 Interst. Commerce Com. R. (Off. Ed.) 69–83, and Harvey v. Railroad Co., Id. 153, where nearly all the authorities are reviewed. An occasional ambiguity arises from the use of the words "free pass," as synonymous with a free ride. In the latter sense, and in that alone, a free pass may be unlawful. This indictment, by describing the "free pass" as a writing and in haec verba, prevents any possible construction of the words of the indictment in the unlawful sense of free transportation, and as it does not charge any transportation, it is not sufficient to put the defendant on trial, and therefore the application to remove must be denied.