## In re PARKER.

(District Court, S. D. California, S. D.   May 20, 1924.)

No. 6335.

1. **Criminal law ⊜⇒242(7)—Evidence held sufficient to authorize removal order.**

On motion for order of removal of husband, indicted in District of Columbia for failing to support wife and minor children, in violation of Act March 23, 1906, evidence, though not strongly supporting charge, *held* sufficient to authorize removal order.

2. **Criminal law ⊜⇒242(7)—Husband's contention that, because he left District of Columbia on date charged, he could not have committed crime held without merit.**

Under indictment charging failure to support wife and minor children, residing in District of Columbia, in violation of Act March 23, 1906, government could prove husband's acts occurring before date of offense charged in indictment, and husband's contention, in proceedings for his removal, that he could not have committed crime within District, because he left District on date charged and did not thereafter return, could not be sustained.

3. **Criminal law ⊜⇒242(5,8)—Indictment, unopposed by evidence, held alone sufficient to sustain removal order.**

In removal proceeding, commissioner or District Court is not called on to determine accused's guilt or innocence, but merely whether there is probable cause to believe accused committed crime charged, and production of indictment found in another district, unopposed by evidence, is of itself sufficient to sustain order of removal.

4. **Criminal law ⊜⇒242(5)—Finding of indictment in another district presumed to have been on probable cause.**

On motion for defendant's removal, finding of indictment in another district is presumed to have been made on sufficient evidence to show that offense charged has been committed, and that there is probable cause to believe accused committed it, but accused may rebut this presumption.

5. **Criminal law ⊜⇒242(4)—Technical objections to statement of charge in indictment not considered on motion for removal.**

On motion for removal of person against whom indictment has been found in another district, technical objections to sufficiency of statement of charge in indictment are not considered, but such questions are for court where indictment is lodged.

6. **Criminal law ⊜⇒242(1)—Under statute, removal proceedings apply to misdemeanors as well as other crimes.**

Under Rev. St. § 1014 (Comp. St. § 1674), removal proceedings are not limited to offenses of a particular grade or character, but apply to all crimes, including misdemeanors.

7. **Criminal law ⊜⇒242(2)—Offense local to District of Columbia is "crime against United States," within removal statute.**

Offense local to District of Columbia is "crime against United States," and proceedings to remove accused to District under Rev. St. § 1014 (Comp. St. § 1674), may be brought for such offense.

8. **Courts ⊜⇒376—Competency of witness in criminal case in federal courts not determined by rule of state court.**

Competency of witness in criminal case is not determined by rule of state in which federal District Court is held.

9. **Depositions ⊜⇒91—Witnesses ⊜⇒61(1)—On motion for removal of husband, indicted for failure to support wife and children, wife is a competent witness, and her deposition may be received in evidence.**

On motion for order of removal of husband, indicted for failing to support wife and minor children, in violation of Act March 23, 1906, wife is competent witness, and her deposition may be received in evidence.

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. Contempt ⬦8—Conduct of wife in seeking to influence judge's decision of removal proceeding against husband held deserving of strongest censure.**

Conduct of wife in writing letter to judge before whom motion for removal of husband, indicted for failure to support wife and children, was to be heard, to influence decision, and in seeking aid of members of Congress to have husband returned, *held* improper, and deserving of strongest censure.

Habeas Corpus. In the matter of Clarence T. Parker. On respondent's application for writ, and on motion of the United States Attorney for an order of removal. Writ discharged, and petitioner remanded to custody of marshal.

Joseph C. Burke, U. S. Atty., and Eugene T. McGann, Sp. Asst. U. S. Atty., both of Los Angeles, Cal., for plaintiff.

Wood & McArthur, of Long Beach, Cal., for defendant.

JAMES, District Judge. On the 5th day of March, 1924, the United States commissioner at Los Angeles made an order holding Clarence T. Parker to answer to a charge pending by indictment in the District of Columbia. The order was based upon a certified copy of the indictment, which was presented to the commissioner. Before the order was made a hearing was had, and the respondent offered himself as a witness and testified. He thereafter applied to this court for a writ of habeas corpus, alleging that the evidence was insufficient to warrant the action taken by the commissioner. The writ was issued and a return was made. At the same time the district attorney presented a motion for an order of removal, based upon the commitment of the commissioner.

The main contention urged on the hearing of the writ, and in opposition to the motion, was that the prima facie showing of probable cause (no question being made as to the identity of the respondent), which the certified copy of the indictment established, was overcome by the testimony of the respondent. At the return time of the writ, and upon the contentions of respondent being stated, a continuance was allowed to enable the government to produce further evidence. It was then stipulated between respondent's counsel and the United States attorney that the deposition of respondent's wife (who had appeared before the grand jury as the sole prosecuting witness) might be taken at Washington, D. C., upon interrogatories, direct and cross, and that such deposition might be used in evidence, subject only to such objections as might be made had the witness appeared before the court in person. Accordingly such deposition was taken and admitted in evidence at the further hearing.

The charge against the respondent, as shown by the indictment, was that he had violated certain provisions of a statute making it an offense in the District of Columbia for a husband to fail and neglect, without just cause, to provide for the support and maintenance of his wife or his minor children under the age of 16 years, where said wife or said minor children are in "destitute or necessitous circumstances," or to desert such wife or minor children. 34 Stat. pt. 1, p. 86. The indictment contains two counts—the first charging failure of respondent to

support and maintain his wife, and the second charging that he failed to support and maintain the two minor children; said children being under the age of 16 years. The commitment of the commissioner was based upon the second count alone. In fixing the time of the commission of the offense, the indictment recites that it was committed as therein described at the District of Columbia on the 18th day of November, 1923, and "continuously from that day to the day of the finding of this indictment." The indorsement on the indictment shows that it was filed in the Supreme Court of the District of Columbia on December 20, 1923.

[1] Respondent testified that he left the city of Washington, where he had lived during his married life with his wife, on November 18, 1923, with the full consent of his wife; that she and one of their children went to the depot with him, understanding that he was to seek a position at Chattanooga or elsewhere; that during the whole of his married life he and his wife had lived at the home of the wife's parents; and that his wife and children were there lodged at the time he left Washington, and were not in "necessitous circumstances." He admitted that at the time that he left Washington he had regular employment as a railroad clerk at a salary of $165 per month, but asserted that the death of his mother, which had occurred in Washington, had disturbed his mind and had made it desirable that he go to some other place to work; that, failing to secure the expected employment at Chattanooga, he continued on to New Orleans, and finally arrived in Los Angeles; that he had difficulty in finding employment at the latter city, and that he was only able to secure temporary positions during the latter part of 1923 and the early part of 1924; that he had at the time of the hearing secured a permanent position with an oil-producing company at a compensation of $6 per day, and that he was willing and anxious that his wife and children should come to Southern California, and that he was willing to there support them; that he had written frequent letters to his wife since leaving the city of Washington, and that she had made no reply to any of such letters; that he had not sent any money to his wife, except the sum of $10 which was sent after his arrest.

In her deposition the wife testified that her husband had left for Chattanooga, Tenn., on the afternoon of November 18, 1923, stating that he would return to Washington on the following Wednesday; that he gave her $20 at the railway station, and that she had never seen him since that time. She denied that the death of his mother had at all disturbed him, and denied that he had in any way informed her of any intention to leave his family or to come to California; that she had learned that, without her knowledge and prior to the 18th of November, he had secured passes covering the trip to Los Angeles. She did not testify that she or her children were suffering for want of the necessaries of life, although it may be said to appear as a reasonable inference that, except for the care and support which the wife's parents might voluntarily provide for her and the children, they must necessarily have been in want. She did testify that her parents were people in "moderate circumstances." She admitted having received letters at various times from her husband, but gave as the only excuse for not responding to

them that he did not give the particular address in Los Angeles to which to direct her replies. It may be noted that she caused him to be indicted one month after his departure from Washington. She testified that she was willing to go wherever her husband was, and continue to live with him as his wife, provided he furnished support for herself and children.

[2] One of the points urged by respondent is that, because the evidence shows without dispute that he left the District of Columbia on the 18th day of November, 1923, and has not since returned there, he could not have committed the crime within that district, citing U. S. v. Mathues, 284 Fed. 368 (D. C.), and U. S. v. Fowkes, 53 Fed. 13, 3 C. C. A. 394 (C. C. A. 3d). In the Mathues Case the fact appeared that the defendant had never been in the District of Columbia, and hence could not have committed the crime charged against him within that jurisdiction. In the Fowkes Case it was held that, because the act which constituted the offense was completed in a state other than that to which the defendant's removal was sought, he could not be returned for trial.

The indictment here charges that the respondent committed the crime of which he is accused at the District of Columbia on the 18th day of November, 1923. The government, under the charge, would be permitted to prove acts of the defendant occurring prior to that date in the District; and it may well be said to appear that the offense was complete at and before the date of the defendant's departure from the District. The wife made statements in her deposition which are corroborative of this conclusion when she testified that respondent had not adequately supported herself and children prior to the time he left. In rebuttal of the wife's testimony, as given in her deposition, the respondent was called by his counsel and testified that his wife's father was employed in some governmental department at Washington, and that the father owned several houses from which he derived a rental.

[3, 4] Keeping in mind that in a removal proceeding the examining commissioner or the District Court is not called upon to determine the question of the guilt or innocence of the accused, but only to determine as to whether a showing is made sufficient to warrant the conclusion that probable cause exists to believe that the accused has committed the crime charged against him, the production of an indictment found in another district, when unopposed by evidence, is of itself sufficient to sustain the order of removal. A presumption attends the finding of such an indictment that the grand jury has received sufficient evidence to show that the offense charged has been committed, and that there is probable cause to believe that the defendant committed it. As the Supreme Court in Beavers v. Henkel, 194 U. S. 84, 24 Sup. Ct. 607, 48 L. Ed. 882, said:

"The government, having once satisfied the provision for an inquiry and obtained an adjudication by the proper tribunal of the existence of probable cause, ought to be able without further litigation concerning that fact to bring the party charged into court for trial."

See, also, Tinsley v. Treat, 205 U. S. 20, 27 Sup. Ct. 430, 51 L. Ed. 689.

299 F.—64

[5] Technical objections to the sufficiency of the statement of the charge as contained in an indictment are not examined into in this kind of a proceeding, but all such questions are left to be determined by the court in the district where the indictment is lodged. Greene v. Henkel, 183 U. S. 249, 22 Sup. Ct. 218, 46 L. Ed. 177; Rodman v. Pothier, 44 Sup. Ct. 360, 68 L. Ed. ——, filed April 7, 1924. The accused is nevertheless entitled to rebut the showing which the production of the indictment makes. It must be admitted that this case as presented on the evidence is not one strongly supporting the charge made in the indictment. I think that the evidence nevertheless is sufficient to authorize a removal order to be made.

[6, 7] Counsel makes note of the fact that the statute under which the indictment was drawn creates an offense of a misdemeanor grade only, and he asserts that it is not the design of the law, as expressed in Rev. St. § 1014 (Comp. St. § 1674), that a person should be removed from one district to another to answer for an offense of so slight importance. He makes the larger claim that that law does not authorize the removal of a person to the District of Columbia for any offense of whatever grade, which is local there, because an offense so created cannot be denominated an offense against the United States. Removal proceedings are not limited, by any language of section 1014, R. S., to offenses of a particular grade or character, but apply to all crimes.

The contention that offenses local to the District of Columbia may not be considered as being crimes against the United States is well answered in the language of Judge McPherson in U. S. v. Campbell (D. C.) 179 Fed. 764:

"If an offense against this statute is not an offense against the United States, how is it to be described? It is certainly not an offense against the District of Columbia, for the District is not a sovereignty, and has no legislative power of its own."

In that case there was considered an application to remove persons charged with conspiring to violate what was known as the "bucket shop" law for the District. In the Mathues Case, before referred to, the court considered on removal proceedings a prosecution under the precise statute which is here involved. No question appears to have been made, however, against the propriety of the proceeding on the ground that it concerned a law local to the District of Columbia. It would indeed be unfortunate if the law were given such a narrow construction as to render persons immune from arrest who, after violating a statute designed for the protection of the inhabitants of the District of Columbia, crossed the line into a state adjoining and there remained.

[8, 9] Respondent's counsel objected specifically to the deposition of the wife being received in evidence, on the ground that she was not a competent witness. The act under which the prosecution was instituted expressly provides as follows:

"In all prosecutions under this act, any existing provisions of law prohibiting the disclosures of confidential communications between husband and wife shall not apply, and both husband and wife shall be competent and compellable witnesses to testify to any and all relevant matters, including the fact of such marriage and the parentage of such child or children." Section 2.

The rule of the state in which the District Court is held does not determine the competency of witnesses in criminal cases. Logan v. U. S., 144 U. S. 265, 12 Sup. Ct. 617, 36 L. Ed. 429; Cohen v. U. S., 214 Fed. 28, 130 C. C. A. 417. While my conclusion is that a sufficient case may be said to have been made out to require that the order of removal be made, I have reached this conclusion with some reluctance, because, upon the story of the marital history of the parties concerned, there is a strong suggestion that the alleged necessitous circumstances, under which it is claimed the wife and two children were left, did not exist at the date fixed in the indictment. The evidence as presented carries further a very pronounced intimation that the process of the government is being made use of for the purpose of having a husband returned across the continent to his wife, rather than to have a condition of necessity suffered by a wife and children relieved. If the interest of the wife only were here concerned, her conduct would recommend that small consideration be given the application for removal.

[10] Not content with allowing the law to proceed in its regular and appointed way, and in the mode prescribed, the wife has addressed a letter to the judge of the court, with the evident intent of influencing a decision, and the information has been brought here that she has solicited the interposition of members of Congress, with the purpose of having them assist in the endeavor to have her husband returned. Such improper conduct on her part is deserving of the strongest censure.

An order will be entered discharging the writ of habeas corpus and remanding the petitioner to the custody of the marshal, that he may be removed to the District of Columbia, pursuant to the order to be made in that behalf.