CRAIG *v.* HECHT, UNITED STATES MARSHAL FOR THE SOUTHERN DISTRICT OF NEW YORK.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 82. Argued October 17, 1923.—Decided November 19, 1923.

1. A circuit judge, as such, has no power to grant the writ of *habeas corpus.* P. 271.
2. A final order discharging a petitioner in *habeas corpus*, made at chambers by a circuit judge exercising by designation the power of the District Court, or by a district judge, is reviewable on appeal by the Circuit Court of Appeals. P. 274.
3. In an ordinary contempt proceeding the District Court has jurisdiction to decide whether the evidence established an offense within the statute and whether the respondent was guilty as charged, and its order sentencing him to imprisonment is reviewable by appeal, and not by *habeas corpus*, which cannot be used as a substitute for appeal, in the absence of exceptional circumstances. P. 277.

282 Fed. 138, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals reversing an order in *habeas corpus* which discharged the petitioner, Craig, from custody under a commitment issued by the District Court in a contempt proceeding. The order of discharge was made by a circuit judge, assigned to the District Court, who directed that it be recorded in that court.

*Mr. Edmund L. Mooney,* with whom *Mr. George P. Nicholson, Mr. Charles T. B. Rowe, Mr. Frank I. Tierney*

and *Mr. Russell Lord Tarbox* were on the brief, for petitioner.

I. The district court acted beyond its jurisdiction, because petitioner's act was not "misbehavior," and did not, and could not, "obstruct" the administration of justice.

II. The circuit judge had jurisdiction to issue the writ of *habeas corpus*. The mere fact that a court is merged does not deprive the judge, whose office still continues, of any jurisdictional power vested in him, *qua* judge. By the Habeas Corpus Act of 1867, 14 Stat. 385, the authority to issue the writ was vested in the "several courts of the United States and the several justices and judges of such courts within their respective jurisdictions," and subsequently, on the appointment of circuit judges, by the Act of April 10, 1869, 16 Stat. 44, and the still later codification in the Revised Statutes, the jurisdiction to issue the writ was vested in "the Supreme Court and the circuit and district courts," Rev. Stats., § 751, and upon "the several justices and judges of the said courts," *id.*, § 752; and again by §§ 754, 755, 757, 758, 760–763, the jurisdictional power of the justices and judges is repeated. These justices and judges are described in the Revised Statutes as "the several justices and judges of the said courts," but since they were in fact "Justices of the Supreme Court," and "circuit judges" and "district judges," this was but a short way of describing the officers in whom was vested the jurisdictional authority. The statute might as well have read, and, in the ordinary vernacular, would have read "the Justices of the Supreme Court, the circuit judges and the district judges," or "United States judge," as in § 6 of the Chinese Exclusion Act of 1862, or "judge of the United States," as in § 1014, Rev. Stats., which would have had the same meaning as the words actually employed. The object and purpose of the applicable provisions of the Judicial Code were to get

rid of superfluous courts, court officers and records, not to circumscribe the jurisdictional power of the judges. *Whitney* v. *Dick,* 202 U. S. 132, distinguished.

The jurisdictional powers of the court and those of the judge are distinct. *United States* v. *Clarke,* 1 Gall. 497. The reluctance of a judge to discharge a person committed by a judge of coördinate jurisdiction, *In re Hale,* 139 Fed. 496, would not apply in the same degree to a circuit judge reëxamining the act of a district judge. The only " other and appropriate sources of judicial power," *Ex parte Tracy,* 249 U. S. 551, are Justices of the Supreme Court and the Supreme Court itself, which should be relieved of such applications whenever possible.

The policy of the United States has been in the direction of extending and not of abridging the advantages of the writ of *habeas corpus.* The Constitution provides that " the privilege of the writ . . . shall not be suspended." *Ex parte Milligan,* 4 Wall. 2. This policy is further evidenced by the acts of Congress in conferring wide jurisdiction. Judiciary Act September 24, 1789, § 14; *Ex parte Bollman,* 4 Cr. 75; Act March 2, 1833, § 7, 4 Stat. 634; Habeas Corpus Act February 5, 1867, 14 Stat. 385; *Ex parte McCardle,* 6 Wall. 318; *Whitney* v. *Dick,* 202 U. S. 132, 136. When the circuit judges were appointed under the Act of 1869, *supra,* there was conferred upon them all of the powers of Supreme Court Justices within their respective circuits, one of which was the power to issue writs of *habeas corpus,* which always inhered in the office of Supreme Court Justice. The circuit judges received a baptism of power to issue this writ at the moment of their appointment; and this power did not originate in or spring from the panoply of a court.

The Act of 1869, providing for the appointment of circuit judges, was reënacted in substance in § 607, Rev. Stats. The Habeas Corpus Act of 1867 was transposed

into §§ 751, 752, Rev. Stats.  This revision of the language of the Habeas Corpus Act, without any apparent intention to change its effect, brought about no substantial change in the law, so that the specification of the several courts of the United States as " the Supreme Court and the circuit court and district courts " meant substantially what it did in the first place in the Habeas Corpus Act, namely, that the power was conferred upon the " several justices and judges of the said cc. 's," to wit, the Supreme Court and the District Court, as expanded by the Act of 1869, appointing circuit judges and giving them the same power, within their jurisdiction, as Supreme Court Judges.  There never has been an express change in the Habeas Corpus Act of 1867, except in its revision by the Revised Statutes.  The *habeas corpus* provisions remain exactly as they were.

It is an " elementary rule that a special and particular statutory provision affording a remedy for particular and specific cases is not repealed by a general law unless the repeal be express or the implication to that end be irresistible." *Ex parte United States,* 226 U. S. 420.  This Court has shown no tendency to restrict the " appropriate sources of judicial power " to issue the writ.  *Ex parte Tracy,* 249 U. S. 551.

A very material consideration, we submit, is that when circuit judges were created no new court was created— the circuit court was already in existence.  As the circuit judges did not derive their origin from a court, it is hard to see how they could lose any of their powers, as judges, by the abolition or merger of the court in which they usually sat.

The holding of the lower court is, in effect, that by the abolition or merger of the circuit court, the circuit judges were shorn of all of their powers—nothing was left to them except their bare titles—and that they were reclothed with the power, and only with the power, to sit

on the bench of the Circuit Courts of Appeals. We know, however, that they retained jurisdiction to sit under the Expedition Act, *Ex parte United States, supra;* and under the Chinese Exclusion Act of 1892, § 6. *Fong Yue Ting* v. *United States,* 149 U. S. 698. They are comprehended within the category of " any justice or judge of the United States " in § 1014, Rev. Stats., relating to the arrest and holding or bail of persons accused of crime. They also may, without designation, grant injunctions or restraining orders in cases pending in the district courts of their circuits (Jud. Code, § 264) and, upon designation by the President, act as a judge of the Court of Customs Appeals. Jud. Code, § 188. As the circuit judges retained these several powers as judges, under the separate acts conferring them, notwithstanding the abolition or merger of the circuit courts by the Judicial Code, how can it be said that they were, by the Judicial Code, shorn of the power conferred by the separate Habeas Corpus Act, unrepealed, to issue the great writ, which they had exercised in numberless instances covering over half a century?

It would be a violent assumption that in dispensing with the machinery of a court, Congress intended to strip the judges thereof of their own inherent powers, especially where the act was not to be " construed to prevent any circuit judge holding district court or serving in the commerce court, or otherwise, as provided for and authorized in other sections of this Act." Jud. Code, § 118. The exercise of this power by a circuit judge is well exampled in the leading case before this court of *Carper* v. *Fitzgerald;* 121 U. S. 87.

In the present case, Circuit Judge Manton was the regularly acting judge holding the chambers part of the district court, under designation when the writ was issued. He was the judge before whom it was our duty to go and he was the judge whose business it was—using the word in its proper sense—to issue the writ.

But, though thus designated, the point of the jurisdiction and power of a circuit judge to issue a writ of *habeas corpus* is necessarily involved, for only by holding that a circuit judge had no such jurisdiction or power, and that the order was an order of the district court, did the court below assert jurisdiction to hear and decide the appeal, notwithstanding the petitioner's motion to dismiss the appeal.

III. In issuing the writ, the circuit judge, in addition to his powers as such, was exercising the powers of a district judge, under designation. *Ex parte United States,* 226 U. S. 420. His order was not a court order, but a judge's order. *Carper v. Fitzgerald, supra.*

It will be observed that § 18, Jud. Code, provides for designation of the circuit judge, but the following section does not limit the judge so designated to holding the court; it provides that " all the acts and proceedings . . . by or before him, in pursuance of such provisions, shall have the same effect and validity as if done by or before the district judge of the said district." The designation in this case follows the lines of the statute.

A circuit judge can no more lay aside his title and powers of circuit judge than could he be stripped of them; he is always a circuit judge. *McCarron v. People,* 13 N. Y. 74.

Even if this Court shall hold that a circuit judge has no power, as such, to grant a writ of *habeas corpus,* he may have the power, under Rev. Stats., § 752 whenever he is a judge of the district court. Where Congress has committed jurisdiction to a judge as a judicial tribunal, he functions through his own inherent power and not through or on behalf of the court of which he is a member. *United States v. Duell,* 172 U. S. 576; *Carper v. Fitzgerald, supra.*

IV. The decisions are uniform that no appeal lay to the Circuit Court of Appeals from an order of a judge; that

only an order of a court might be reviewed by appeal or writ of error. *Carper* v. *Fitzgerald, supra; In re Lennon,* 150 U. S. 393; *McKnight* v. *James,* 155 U. S. 685; *Lambert* v. *Barrett,* 157 U. S. 697; *Ex parte Jacobi,* 104 Fed. 681; *Harkrader* v. *Wadley,* 172 U. S. 148.

V. This Court had exclusive jurisdiction, by direct appeal, to review the order discharging the petitioner, which was based upon a finding that the petitioner had been deprived of his liberty by an excess of power, involving the construction and application of the Constitution. The assumption of jurisdiction by the Circuit Court of Appeals warrants and requires the intervention of this Court. Jud. Code, § 238; *Raton Water Works Co.* v. *Raton,* 249 U. S. 552, and other cases.

VI. If the Circuit Court of Appeals had no jurisdiction to review the order of a circuit judge, its determination should be reversed regardless of the question whether the district court acted in excess of its powers, and regardless, also, of whether *habeas corpus* was the proper remedy, leaving those questions to be reviewed by appropriate procedure. *First National Bank* v. *Chicago Title & Trust Co.,* 198 U. S. 280.

VII. *Habeas corpus* was the proper and effective remedy for excess of power or lack of jurisdiction in the commitment for asserted contempt. *Ex parte Hudgings,* 249 U. S. 378; *In re Watts and Sachs,* 190 U. S. 1; *Cuyler* v. *Atlantic & N. C. R. R. Co.,* 131 Fed. 95; *In re Reese,* 98 Fed. 984; *Ex parte Dock Bridges,* 2 Woods, 428; *Ex parte Lange,* 18 Wall. 163; *Ex parte Siebold,* 100 U. S. 371; *Ex parte Fisk,* 113 U. S. 713; *In re Ayers,* 123 U. S. 443; *Nielsen, Petitioner,* 131 U. S. 176; *Cuddy, Petitioner,* 131 U. S. 280; *In re Mayfield,* 141 U. S. 107; *Ex parte Robinson,* 144 Fed. 835; *Ex parte Bigelow,* 113 U. S. 328; *In re Belt,* 159 U. S. 95; *Hyde* v. *Shine,* 199 U. S. 62.

VIII. The disregard, by the court below, of the statutory proviso of punishment for obstructive misbehavior,

only, and the limitations sought to be placed by the court below on the scope of the writ of *habeas corpus,* are not in accord with the rulings of this Court. Jud. Code § 268; *Brass. Crosby, Lord Mayor of London,* 3 Wilson, 188; *Ex parte Robinson,* 19 Wall. 505, referred to,

*Ex parte Kearney,* 7 Wheat. 38, and *Ex parte Watkins,* 3 Pet. 193, were decided before the Act of 1831 (now Jud. Code, § 268), which introduced the proviso of obstructive misbehavior as the basis of contempt, and are no longer applicable.

We freely concede that the writ of *habeas corpus* may not be employed as an anticipatory writ of error, such as was discountenanced in *Henry* v. *Henkel,* 235 U. S. 219; *Rumely* v. *McCarthy,* 250 U. S. 283, and similar cases. But generally the rule of procedure for which such cases stand is quite beside the right to attack by writ for lack of jurisdiction or excess of power. *Ex parte Parks,* 93 U. S. 18; *Ex parte Yarbrough,* 110 U. S. 651; *Ex parte Siebold,* 100 U. S. 375; *United States* v. *Pridgeon,* 153 U. S. 48; *Ex parte Lange,* 18 Wall. 163; *Ex parte Hudgings,* 249 U. S. 378.

Even though the only question that the court on *habeas corpus* can look into is one of jurisdiction, broadly considered, the cases show that the court may look into the facts upon which the conviction was based, to the extent that they affect the jurisdiction of the court which assumed to make the adjudication. *In re Mayfield,* 141 U. S. 107; *Cuddy, Petitioner,* 131 U. S. 280.

IX. The objections raised to the form of the writ were unavailing to oust the circuit judge of power to act.

*Mr. Solicitor General Beck,* with whom *Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, was on the brief, for respondent.

I. The judgment of conviction rendered by the district court was final and conclusive until reversed on writ of error.

The court had jurisdiction of the person of the offender and of the offense, and the sentence imposed was within its power, both inherent and as confirmed by the statute. *Ex parte Robinson,* 19 Wall. 505; *In re Debs,* 158 U. S. 565; *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402.

The authority conferred by Jud. Code, § 268, clearly embraced the offense. No issue of jurisdiction is left. The petitioner urged certain issues of law and fact as affecting the jurisdiction, but every one of these was open to review on appeal to this Court, as the judgment of conviction was unquestionably a final decision. Jud. Code, § 128; *Bessette* v. *Conkey Co.,* 194 U. S. 324. Assuming that the trial court's determination of every one of these questions was erroneous, none of them would be within the scope of *habeas corpus. Ex parte Watkins,* 3 Pet. 193; *Riddle* v. *Dyche,* 262 U. S. 333.

II. The matters litigated before Judge Manton did not involve the jurisdiction of the court which tried and sentenced the petitioner, and the proceedings amounted to a mere review on the merits for which an appeal was the proper remedy.

The law is that the findings of the trial court may not be attacked collaterally, nor can the record be examined to see whether there is evidence warranting a conviction. *Harlan* v. *McGourin,* 218 U. S. 442; *Ex parte Carll,* 106 U. S. 521; *In re Debs,* 158 U. S. 565; *Matter of Gregory,* 219 U. S. 210.

III. The writ of *habeas corpus* may not be used as a substitute for an appeal. The court on *habeas corpus* is limited to jurisdictional questions. *Glasgow* v. *Moyer,* 225 U. S. 420; *Matter of Gregory, supra; Ex parte Watkins,* 3 Pet. 193; *Ex parte Parks,* 93 U. S. 18; *Harlan* v. *McGourin, supra.*

To warrant discharge on *habeas corpus,* the judgment, upon which the commitment is based, must be not merely

erroneous, but absolutely void. This proposition ex-
cludes from consideration any error, however vital or
prejudicial it may be deemed. The remedy for error is
by appeal. The cases on this proposition are so varied
and so strongly stated as to leave no doubt of their pur-
port or effect. *Ex parte Watkins,* 3 Pet. 193; *Ex parte
Parks,* 93 U. S. 18; *Ex parte Yarbrough,* 110 U. S. 651;
*Ex parte Spencer,* 228 U. S. 652; *Ex parte Siebold,* 100
U. S. 371.

While it may be admitted that to some extent a con-
tempt case is *sui generis,* nevertheless it is governed by
the general rules applicable to appeals and writs of error.
*Habeas corpus* is not the method of review provided for
contempt cases or any class of cases. *Ex parte Kearney,*
7 Wheat. 38.

The case at bar is plainly within the general rule.
Judge Manton accepted the contentions of the petitioner
in two respects. He placed an innocuous interpretation
upon the letter which was the basis of the contempt
charge, and he decided that there was nothing pending
*sub judice* when the letter was published. That is, he
reversed Judge Mayer's findings of fact, and made con-
trary findings. But the sufficiency of the evidence was
not before him. It is clearly distinguished from jurisdic-
tional questions. *Harlan* v. *McGourin,* 218 U. S. 442,
and other cases cited above.

If the proposition might properly be argued here, it
could easily be demonstrated that the publication was
contemptuous.

As to the contention that there was nothing pending
*sub judice* at the time of the publication, if it be assumed
that this is an essential element of the crime, it is to be
determined, like every other element, by the trial court.
The determination of that court, if erroneous, might be
corrected on appeal. If we were at all concerned with
that question here (and we are not), it might be pointed

out that the contemptuous criticism was not limited to a single past order, but referred to a continuing policy in the receivership, which was undoubtedly pending, to many orders made in that receivership; and the writer sought to procure the entry of other orders in the future. This question was carefully considered and effectively disposed of by the trial court in its opinion.

The exceptions to the general rule as to the scope of *habeas corpus* do not include the case at bar. There are only five classes of cases in which the court on *habeas corpus* will go beyond the question of jurisdiction. (1) Where there is a conflict of jurisdiction between a State and the United States; (2) where the authority and operations of the Federal Government are or may be interfered with by state action; (3) where rights or obligations of the United States under a treaty are involved; (4) where the petitioner is held under state process based upon state law which is in violation of the Constitution; and (5) where the judgment or order under which he is held is a nullity because in excess of the power of the court. This classification is based upon an analysis of *Henry* v. *Henkel*, 235 U. S. 228, and the cases there cited.

The first and second exceptions are closely related. The fundamental reason for the first four exceptions is the necessity of employing *habeas corpus* in order expeditiously and adequately to maintain the supremacy of federal laws and treaties in compliance with § 2 of Art. VI of the Constitution. See *Tarble's Case,* 13 Wall. 397; *Tennessee* v. *Davis,* 100 U. S. 257; *In re Neagle,* 135 U. S. 1; *In re Watts and Sachs,* 190 U. S. 1.

Illustrations of the first and second exceptions are *In re Loney,* 134 U. S. 372, explained in *New York* v. *Eno,* 155 U. S. 89; *Tarble's Case, supra; Boske* v. *Comingore,* 177 U. S. 459; *In re Neagle, supra,* and possibly *In re Watts and Sachs, supra.* These are cases of urgency.

The third exception, essential to assure the fulfillment of treaty obligations and the proper conduct of foreign

relations, is illustrated in *In re Mayfield*, 141 U. S. 107, and is commented upon in *Ex parte Royall*, 117 U S. 241; *In re Neagle*, 135 U. S. 74; *Boske* v. *Comingore*, 177 U. S. 466; *In re Lincoln*, 202 U. S. 178.

As to the fourth exception, under which the validity of state laws, claimed to infringe the Federal Constitution, is sometimes tested on *habeas corpus, Ex parte Royall*, 117 U. S. 241, is the best example. The power of the court in this class of cases is purely discretionary. This subject is also discussed and the cases are collected in *In re Lincoln*, 202 U. S. 178.

In these four exceptional classes of cases the writ of *habeas corpus* is employed whenever the federal courts are confronted with the duty of maintaining the supremacy of the laws, the treaties, and the Constitution of the United States against attack by the States. The applicant for the writ in these cases has no absolute right to it, except where it is expressly given by statute. The granting of this extraordinary relief rests in the court's discretion and is exercised sparingly and only in an emergency.

Examples of the fifth exception, which may be called cases involving excess of power, are *Ex parte Lange*, 18 Wall. 163; *Nielsen, Petitioner*, 131 U. S. 176; and *Ex parte Hudgings*, 249 U. S. 378. The petitioner strives to bring himself within this exception.

The *Hudgings Case* presents no analogy to the case at bar. In *Ex parte Lange*, 18 Wall. 163, the judgment was not merely erroneous but absolutely void; as also in *Nielsen, Petitioner*, 131 U. S. 176. *Ex parte Bridges*, 2 Woods, 248, was substantially identical in facts with the *Loney Case*, 134 U. S. 372. *In re Mayfield*, 141 U. S. 107, plainly comes within the third exception. *In re Watts and Sachs*, 190 U. S. 1, the Court took jurisdiction by certiorari, and employed *habeas corpus* in aid of its juris-

diction. Assuming, however, that the case were one o *habeas corpus* alone, there was a direct conflict betweer the state and federal courts. The case is therefore within the first exception.

There is another situation sometimes occurring on *habeas corpus* ·that it may be suggested constitutes an exception to the general rule. It is not an exception, but if it were, it could have no application to the case at bar. Where there is a lack of jurisdiction in the lower court or its judgment is void, an appellate court, authorized to review its action on writ of error, may grant relief by *habeas corpus,* instead. of remitting the applicant to .his remedy by writ of error. *Ex parte Siebold,* 100 U. S. 371. But such power can be exercised, as is clearly shown in the *Siebold Case,* only by a court having supervisory jurisdiction, from which a writ of error would lie, and only when the judgment assailed is void. 100 U. S. 375. See also *Ex parte Spencer,* 228 U. S. 652.

As heretofore indicated, the enumerated exceptions are merely the instances in which; because of the absence of other forms of remedy, .it is necessary to resort to *habeas corpus* in order to assure the rights of persons restrained of liberty, and are in effect mere interpretations of § 753, Rev. Stats.

IV. Since the circuit court was abolished, a judge of the Circuit Court of Appeals has no power to grant the writ of *habeas corpus. Whitney* v. *Dick,* 202 U. S. 132; *McLish* v. *Roff,* 141 U. S. 666; *Lau Ow Bew* v. *United States,* 144 U. S. 55; *Fong Yue Ting* v. *United States,* 149 U. S. 698; *Ex parte Tracy,* 249 U. S. 551.

The so-called writ of *habeas corpus* was void. It is not addressed to anybody; it bears the seal of no court nor the signature of the clerk, and is merely signed " Martin T. Manton, U. S. C. J."

V. The order of Judge Manton was appealable to the Circuit Court of Appeals. That court regarded the order

discharging the petitioner from custody as an order of the district court, made by a judge sitting in that court, and therefore appealable. 282 Fed. 145. This conclusion, we submit, is sound in view of the facts shown by the record, and it is unnecessary to add anything to the reasoning on it of the judges of the Circuit Court of Appeals.

Even though the order be regarded as a judge's order, it was nevertheless appealable. *Webb* v. *York,* 70 Fed. 753; *United States* v. *Fowkes,* 53 Fed. 13; *Duff* v. *Carrier,* 55 Fed. 433; *In re Starr,* 56 Fed. 142; *United States* v. *Gee Lee,* 50 Fed. 271. *Carper* v. *Fitzgerald,* 121 U. S. 87, distinguished.

VI. Misuse of the writ of *habeas corpus* is becoming increasingly prevalent. This record presents the situation in a most aggravating form. Not only was there no attempt to review the conviction in the orderly manner prescribed by law, but, by deliberate avoidance of that method, an appeal to another judge was substituted, and the attempt was made to shape the proceedings so that no review of his decision could be had. The result has been intolerable delay, great and unnecessary expense, and an offender against the administration of justice still unpunished.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The opinions below are reported in 266 Fed. 230; 274 Fed. 177; 279 Fed. 900; 282 Fed. 138.

In October, 1919, petitioner Craig, Comptroller of New York City, wrote and published a letter to Public Service Commissioner Nixon, wherein he assailed United States District Judge Mayer because of certain action taken in receivership proceedings then pending. The United States District Attorney filed an information charging him with criminal contempt under § 268, Judicial Code.

Having heard the evidence, given the matter prolonged consideration and offered the accused opportunity to retract, on February 24, 1921—some fifteen months after the offense—Judge Mayer, holding the District Court, sentenced petitioner to jail for sixty days and committed him to the custody of the United States Marshal. Immediately, without making any effort to appeal, Craig presented his verified petition, addressed " To the Honorable Martin T. Manton, Circuit Judge of the United States," asking for a writ of *habeas corpus* and final discharge. The record of all evidence and proceedings before the District Court was annexed to or, by reference, made part of the petition. The judge promptly signed and issued the following writing, which bore neither seal of court nor clerk's attestation:

" The United States of America,  
Second Judicial Circuit,              } ss.:  
Southern District of New York.

" We command you that the body of Charles L. Craig, in your custody detained, as it is said, together with the day and cause of his caption and detention, you safely have before Honorable Martin T. Manton, United States Circuit Judge for the Second Judicial Circuit, within the Circuit and District aforesaid, to do and receive all and singular those things which the said judge shall then and there consider of him in this behalf; and have you then and there this writ.

" Witness the Honorable Martin T. Manton, United States Circuit Judge for the Second Judicial Circuit, this 24th day of February, 1921, and in the 145th year of the Independence of the United States of America. Martin T. Manton, U. S. C. J."

The Marshal made return, and set up the contempt proceedings in the District Court along with the order of commitment. This was traversed; and Judge Manton heard the cause. He said and ruled—

" Was there a cause pending within the rule of contempt concerning libelous publications? A cause is pending when it is still open to modifications, appeal or rehearing and until the final judgment is rendered. Did the letter concern a cause pending? If it did not, it could not obstruct the administration of justice. The application before the court which is the subject matter of the letter was the matter of a co-receiver. As to this the court had definitely decided adverse to the Comptroller. The court's action was complete in respect to this matter. . . . The district judge pointed out, as did the information, that the whole railroad situation was before the court, since it was an equity proceeding, but it is not of this that the defendant wrote. This is fully corroborated by the testimony of the defendant. He also testified that he had no intention of obstructing the delivery of justice or misbehaving himself so as to obstruct the administration of justice. He stands convicted upon his letter alone and such inferences as may be drawn therefrom. His conviction rests upon an issue between the court and the defendant, and it is one of terminology or interpretation. There is no criminal intent discoverable from this record to support the interpretation placed upon it by the court, nor was there pending *sub judice* a proceeding before the court at the time the letter was written. The conclusion is irresistible that the court exceeded its jurisdiction by an excess of power in adjudging the defendant guilty. The petition for discharge is granted."

" It is ordered that the papers in this proceeding be filed with the Clerk of the United States District Court for the Southern District of New York, in his office in the Post Office Building, in the Borough of Manhattan, City of New York, and that this order be recorded in said court.".

Circuit Judge Hough allowed an appeal. Being of opinion that Circuit Judges, as such, are without power

to grant writs of *habeas corpus,* the Circuit Court of Appeals treated the cause as determined by the District Court, to which Judge Manton had been assigned, and held—" We find no reason why this case is not governed by the general rule that a habeas corpus proceeding cannot be used as a writ or error but must be limited to jurisdictional questions. . . . The sole question which could be considered in the habeas corpus proceedings was as to the jurisdiction of the District Judge. If he had jurisdiction of the person of the petitioner, Craig, and jurisdiction of the subject and authority to render the judgment which he pronounced, there was no right to inquire further in the habeas corpus proceedings, and no right to determine whether or not, in the exercise of that jurisdiction, the District Judge had committed error. If errors were committed, the law afforded a remedy therefor, but not by habeas corpus." It concluded that the District Court, Judge Mayer presiding, had jurisdiction of both offense and person, and reversed the order of discharge.

The court correctly held that United States Circuit Judges, as such, have no power to grant writs of *habeas corpus.*

Two sections of the Revised Statutes authorize the granting and issuing of such writs.

" Sec. 751. The Supreme Court and the circuit and district courts shall have power to issue writs of habeas corpus.

" Sec. 752. The several justices and judges of the said courts, within their respective jurisdictions, shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty."

The Judiciary Act of 1789 provided for the organization of Circuit Courts. Until 1869 they were presided over by District Judges and Justices of the Supreme Court. The Act of April 10, 1869, 16 Stat. 44, created the office

of Circuit Judge. " For each of the nine existing judicial circuits there shall be appointed a circuit judge, who shall reside in his circuit, and shall possess the same power and jurisdiction therein as the justice of the Supreme Court allotted to the circuit." This provision became part of—

, Sec. 607, Rev. Stats. " For each circuit there shall be appointed a circuit judge, who shall have the same power and jurisdiction therein as the justice of the Supreme Court, allotted to the circuit. . . . Every circuit judge shall reside within his circuit."

The Act of March 3, 1911 (Judicial Code, §§ 289, 291, 297), abolished Circuit Courts, conferred their duties and powers upon the District Courts and specifically repealed § 607, Rev. Stats. It also repealed " all Acts and parts of Acts authorizing the appointment of United States circuit or district judges . . . enacted prior to February 1, 1911." Section 118, Judicial Code, provides—

" There shall be in the second, seventh, and eighth circuits, respectively, four circuit judges; in the fourth circuit, two circuit judges; and in each of the other circuits, three circuit judges, to be appointed by the President, by and with the advice and consent of the Senate. . . . The circuit judges in each circuit shall be judges of the circuit court of appeals in that circuit, and it shall be the duty of each circuit judge in each circuit to sit as one of the judges of the circuit court of appeals in that circuit from time to time according to law: *Provided,* That nothing in this section shall be construed to prevent any circuit judge holding district court or serving in the commerce court, or otherwise, as provided for and authorized in other sections of this Act."

Sections 751 and 752, Rev. Stats., give authority to grant writs of *habeas corpus* only to judges and justices of the courts therein specified—Supreme, Circuit, and District. The Judicial Code abolished the Circuit Courts. Only justices of the Supreme Court and judges of District Courts remain within the ambit of the statute.

Section 18, Judicial Code. "Whenever, in the judgment of the senior circuit judge of the circuit in which the district lies, or of the circuit justice assigned to such circuit, or of the Chief Justice, the public interest shall require, the said judge, or associate justice, or Chief Justice, shall designate and appoint any circuit judge of the circuit to hold said district court."

A duly executed writing designated and appointed Judge Manton " to hold a session of the District Court of the United States for the Southern District of New York for the trial of causes and the hearing and disposition of such ex parte and other business as may come before him during the period beginning February 21, 1921, and ending March 5, 1921." Petitioner's counsel took care to show this assignment and, responding to the motion that the judge should proceed as a District Court in hearing the application for petitioner's discharge, he stated— "Our position is, your Honor, that the writ is issued by you as a Circuit Judge. In addition thereto, you were designated formally under the statute, and under that form of designation you had the power and the duty in chambers of doing the acts and proceedings of a District Court Judge, and we therefore claim that there was super-added to your powers, if necessary, the powers and activities of a District Court Judge." And in the brief here counsel maintains, " In issuing the writ Circuit Judge Manton, in addition to his powers as a Circuit Judge, was exercising the powers of a District Judge under designation."

As Circuit Judges have no authority to issue writs of *habeas corpus,* Judge Manton acted unlawfully unless the proceeding was before him either as District Judge or as the District Court. The record shows he did not rely solely on his authority as Circuit Judge; and, considering his assignment and all the circumstances, we agree with the court below that he was exercising the

74308°—24——18

powers of the District Court. He was not a District Judge, but Circuit Judge assigned "to hold a session of the District Court."

If it be conceded that he acted as District Judge and not as the District Court, nevertheless his action was subject to review. *Webb* v. *York* (1896), 74 Fed. 753, holds that an appeal lies to the Circuit Court of Appeals from the final orders of a judge at chambers in *habeas corpus* proceedings. Notwithstanding *Hoskins* v. *Funk,* 239 Fed. 278, to the contrary, we approve the conclusion reached in *Webb* v. *York* and think it is supported by sound argument. The court said—

" The present motion to dismiss . . raises the question whether an appeal lies to this court from an order made by a district judge at chambers in a habeas corpus proceeding, directing the discharge of a prisoner. Prior to the act of March 3, 1891, creating circuit courts of appeals . . an appeal lay from such orders to the circuit court for the district by virtue of section 763, Rev. St. . . .

" ' Sec. 763. From the final decision of any court, justice or judge inferior to the circuit court, upon an application for a writ of habeas corpus or upon such writ when issued, an appeal may be taken to the circuit court for the district in which the cause is heard. . . .'

" In the case of *United States* v. *Fowkes,* 53 Fed. 13, it was held that the act of March 3, 1891, *supra,* operated to divest the circuit courts of their appellate jurisdiction in habeas corpus cases, under section 763, and that by virtue of the provisions of the act of March 3, 1891, the various circuit courts of appeals had acquired the jurisdiction to review the decisions of district courts in habeas corpus cases that had previously been exercised by the circuit courts. This conclusion, we think, was fairly warranted by the following clause. . . .

" ' Sec. 4. That no appeal, whether by writ of error or otherwise, shall hereafter be taken or allowed from any

district court to the existing circuit courts, and no appellate jurisdiction shall hereafter be exercised or allowed by said existing circuit courts, but all appeals by writ of error or otherwise, from said district courts shall only be subject to review in the supreme court of the United States or in the circuit court of appeals hereby established. . . .'

" See, also *Duff* v. *Carrier,* 55 Fed. 433.

" The result is that, unless the act of March 3, 1891, is construed as lodging in the circuit court of appeals the appellate jurisdiction, under section 763, from final decisions of district judges, that was previously exercised by the circuit courts, the right of appeal, plainly granted by that section, from final decisions of district judges at chambers in habeas corpus cases is lost, and becomes valueless, because no court has been designated to which appeals in such cases may be taken. We think it clear that it was not the purpose of Congress to thus legislate. If it had intended to abolish the right of appeal from the decisions of district judges in habeas corpus cases, it would doubtless have done so in plain and direct terms. The fact that the right of appeal was not thus abolished furnishes a persuasive inference that Congress intended to designate a court to hear and determine such appeals. In *McLish* v. *Roff,* 141 U. S. 661, 666, 12 Sup. Ct. 118, and in *Lau Ow Bew* v. *United States,* 144 U. S. 47, 12 Sup. Ct. 517, it was said, in substance, by the supreme court of the United States that it was the purpose of the act of March 3, 1891, to distribute the entire appellate jurisdiction theretofore exercised by the federal courts between the supreme court of the United States and the circuit courts of appeals that were thereby established. This intent, we think, is plainly apparent from the terms of the act. Moreover, the act in question very much enlarged the right of appeal, and that was one of its chief objects. In no single instance, so far as we are aware,

was a previous right of appeal abolished. We think, therefore, that it may be fairly concluded that it was the intention of Congress to confer on the circuit courts of appeals the right to hear appeals from final orders made by district judges in habeas corpus cases, as well as to hear appeals from final decisions of district courts made in such cases. We can conceive of no reason why the right should be denied in the one case and granted in the other, and such we believe was not the intent of the lawmaker. In the case of *United States* v. *Gee Lee*, 50 Fed. 271, it was held that the words ' the judge of the district court for the district ' as used in an act of Congress, were equivalent to the words ' district court for the district.' By a similar latitude of construction, the intent being clear, we think that section 4 of the act of March 3, 1891, may be held to authorize an appeal to the United States circuit court of appeals from a final decision of a district judge at chambers in a habeas corpus case, as well as from a final decision of a district court."

See also *United States, Petitioner* 194 U. S. 194.

*Carper* v. *Fitzgerald*, 121 U. S. 87; *In re Lennon*, 150 U. S. 393; *McKnight* v. *James*, 155 U. S. 685; *Lambert* v. *Barrett*, 157 U. S. 697; *Harkrader* v. *Wadley*, 172 U. S. 148, are cited by petitioner to show that no appeal lay from the order discharging petitioner. These cases relate to the jurisdiction of this Court, not the Circuit Court of Appeals. The one first cited and most relied upon was decided in 1887. It recognizes the distinction between orders of a judge, as such, and decrees by the court. It denied the right to appeal here from a judge's order; it did not discuss the power of Circuit Courts to review such orders. The later cited cases go no further than to hold that appeals do not lie to this Court from orders by judges at chambers.

Although in point, we cannot agree with *Ex parte Jacobi*, 104 Fed. 681, where the opinion of the Circuit

Judge attempts to support denial of an appeal to the Circuit Court of Appeals from an order granted at chambers.

The court below had jurisdiction of the appeal.

On the merits, there is nothing unusual about the cause now before us. Unlike *Ex parte Hudgings,* 249 U. S. 378, 384, it cannot be regarded as " an exception to the general rules of procedure." Nor do we think it presents circumstances sufficiently extraordinary to bring it within any class of " exceptional cases." *Henry* v. *Henkel,* 235 U. S. 219, 228.

The matter heard by Judge Mayer was an ordinary contempt proceeding and *Toldeo Newspaper Co.* v. *United States,* 247 U. S. 402, is enough to show that the District Court had power to entertain it, decide whether the evidence established an offense within the statute and determine petitioner's guilt or innocence. When the latter found himself aggrieved by the decree his remedy by appeal was plain. Neglecting that course, he asked a single judge to review and upset the entire proceedings, and now claims there was no appeal from the favorable order. As tersely stated by Judge Hough, " there is no new matter in this record attacking jurisdiction; what really happened was that the case was tried over again, and the so-called writ was no more than a device for obtaining a new trial." The course taken indicates studied purpose to escape review of either proceeding by an appellate court. Petitioner may not complain of unfortunate consequences to himself.

The Circuit Court of Appeals correctly applied the well-established general rule that a writ of *habeas corpus* cannot be utilized for the purpose of proceeding in error. *Harlan* v. *McGourin,* 218 U. S. 442, 445; *Matter of Gregory,* 219 U. S. 210, 213, 217; *Glasgow* v. *Moyer,* 225 U. S. 420, 428, 429. Its decree is affirmed and the cause will be remanded to the District Court for the Southern District of New York with directions to vacate the order

releasing petitioner; discharge the writ; and take such further proceedings as may be necessary to carry this opinion into effect.

*Affirmed.*

MR. JUSTICE SUTHERLAND took no part in the consideration or decision of this cause.

MR. CHIEF JUSTICE TAFT, concurring.

I concur fully in the opinion of the Court.

It is of primary importance that the right freely to comment on and criticise the action, opinions and judgments of courts and judges should be preserved inviolate; but it is also essential that courts and judges should not be impeded in the conduct of judicial business by publications having the direct tendency and effect of obstructing the enforcement of their orders and judgments, or of impairing the justice and impartiality of verdicts.

If the publication criticises the judge or court after the matter with which the criticism has to do has been finally adjudicated and the proceedings are ended so that the carrying out of the court's judgment can not be thereby obstructed, the publication is not contempt and can not be summarily punished by the court however false, malicious or unjust it may be. The remedy of the judge as an individual is by action or prosecution for libel. If, however, the publication is intended and calculated to obstruct and embarrass the court in a pending proceeding in the matter of the rendition of an impartial verdict, or in the carrying out of its orders and judgment, the court may, and it is its duty to protect the administration of justice by punishment of the offender for contempt.

The federal statute concerning contempts as construed by this Court in prior cases vests in the trial judge the jurisdiction to decide whether a publication is obstructive

or defamatory only. The delicacy there is in the judge's deciding whether an attack upon his own judicial action is mere criticism or real obstruction, and the possibility that impulse may incline his view to personal vindication, are manifest. But the law gives the person convicted of contempt in such a case the right to have the whole question on facts and law reviewed by three judges of the Circuit Court of Appeals who have had no part in the proceedings, and if not successful in that court, to apply to this Court for an opportunity for a similar review here.

The petitioner and his counsel have made such a review impossible. Instead of pursuing this plain remedy for injustice that may have been done by the trial judge and securing by an appellate court a review of this very serious question on the merits, they sought by applying to a single judge of only coördinate authority for a writ of *habeas corpus* to release the petitioner on the ground that the trial judge was without jurisdiction to make the decision he did. This raised the sole issue whether the trial judge had authority to decide the question, not whether he had rightly decided it.

Relying on a decision of this Court made years ago when the statutory provisions were different from those which now apply, the petitioner and his counsel thought that if they could secure a decision from a single circuit judge releasing the petitioner, no appeal would lie from his decision and that thus resort to the appellate courts could be avoided. The single judge to whom they applied released the prisoner. They were, however, mistaken in supposing that no appeal lay from the judge's decision on the question of the trial court's jurisdiction. The Government prosecuted its appeal and the only issue presented in that review is the matter of the trial court's jurisdiction which the Circuit Court of Appeals and we uphold. In this way, the petitioner and his counsel threw

away opportunity for a review of the case on its merits in the Circuit Court of Appeals and in this Court in their purpose to make a short cut and secure final release through the act of a single judge. This is the situation the petitioner finds himself in and we are without power to relieve him.

MR. JUSTICE HOLMES, dissenting.

I think that the petitioner's resort to *habeas corpus* in this case was right and was the only proper course. Very possibly some of the cases confuse the principles that govern jurisdiction with those that govern merits. See *Fauntleroy* v. *Lum,* 210 U. S. 230, 235. But I think that this should be treated as a question of jurisdiction. The statute puts it as a matter of power, "The said courts shall have power . . . to punish . . . contempts of their authority: *Provided,* That such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice," etc. Jud. Code, § 268. I think that these words should be taken literally and that we do not need a better illustration of the need to treat them as jurisdictional and to confine the jurisdiction very narrowly than the present case. For we must not confound the power to punish this kind of contempts with the power to overcome and punish disobedience to or defiance of the orders of a court, although unfortunately both are called by the same name. That of course a court may and should use as fully as needed, but this, especially if it is to be extended by decisions to which I cannot agree, makes a man judge in matters in which he is likely to have keen personal interest and feeling although neither self-protection nor the duty of going on with the work requires him to take such a part. It seems to me that the statute on its face plainly limits the jurisdiction of the judge in this class of cases to those

where his personal action is necessary in a strict sense in order to enable him to go on with his work. But wherever the line may be drawn it is a jurisdictional line. "The jurisdiction attaches only when the suit presents a substantial claim under an act of Congress." *Blumenstock Brothers Advertising Agency* v. *Curtis Publishing Co.*, 252 U. S. 436, 441. *Ex parte Hudgings*, 249 U. S. 378.

I think that the sentence from which the petitioner seeks relief was more than an abuse of power. I think it should be held wholly void. I think in the first place that there was no matter pending before the Court in the sense that it must be to make this kind of contempt possible. It is not enough that somebody may hereafter move to have something done. There was nothing then awaiting decision when the petitioner's letter was published. The English cases show that the law of England at least is in accord with my view. *Metzler* v. *Gounod*, 30 Law Times R., N. S., 264. But if there had been, and giving the most unfavorable interpretation to all that the letter says, I do not see how to misstate past matters of fact of the sort charged here could be said to obstruct the administration of justice. Suppose the petitioner falsely and unjustly charged the judge with having excluded him from knowledge of the facts, how can it be pretended that the charge obstructed the administration of justice when the judge seemingly was willing to condone it if the petitioner would retract? Unless a judge while sitting can lay hold of any one who ventures to publish anything that tends to make him unpopular or to belittle him I cannot see what power Judge Mayer had to touch Mr. Craig. Even if feeling was tense there is no such thing as what Keating, J., in *Metzler* v. *Gounod* calls contingent contempt. A man cannot be summarily laid by the heels because his words may make public feeling more unfavorable in case the judge should be asked to act at some

later date, any more than he can for exciting public feeling against a judge for what he already has·done.

MR. JUSTICE BRANDEIS concurs in this opinion.