IN THE MATTER OF ENRIQUE COLLADO, Petitioner.

San Juan, Law, No. 1667.

448

Opinion filed June 25, 1924.

*Mr. H. G. Molina* for petitioner.

*Honorable H. P. Coats,* Attorney General, and *Honorable Miguel A. Muñoz,* Assistant Attorney General of Porto Rico, for the marshal of the Insular district court of San Juan.

ODLIN, Judge, delivered the following opinion:

On May 7, 1924, there was filed in the office of the clerk of this court an application or petition for a writ of habeas corpus, and it was alleged therein that the petitioner, Enrique Collado, during the month of December, 1920, while he was residing in the city of Paris in the Republic of France, was arrested by reason of a warrant which had been issued by the President of the United States upon extradition proceedings, based upon an indictment which had been found against the petitioner by the grand jury of the Insular district court of San Juan, Porto Rico, in which he was charged with the crime of embezzlement. It is further alleged in said petition that the said Collado was extradited as aforesaid in accordance with the Additional Article to the Extradition Convention between the United States of America and the Republic of France, the same being set forth in § 3 of the petition. It is further alleged that in accordance with the said warrant of arrest which had been issued by the

President of the United States, the government of France acceded to the extradition of the petitioner, and that the latter was embarked from France in the month of December, 1921, under the custody of a representative of the government of Porto Rico, who had been specially appointed by the governor of Porto Rico for that purpose; that the petitioner was brought to Porto Rico by the said representative and immediately placed in prison upon arrival in Porto Rico, in accordance with a certain warrant of arrest which had been issued by the Insular district court of San Juan, to respond to the said indictment which charged the petitioner with embezzlement. It is further set forth that the said indictment charging embezzlement against the petitioner was subsequently dismissed by the Insular district court of San Juan, and thereupon said proceeding terminated; but immediately thereafter, and without allowing the petitioner a reasonable time within which to return to France, he was arrested at the instance of the prosecuting attorney of the said Insular district court to respond for other and distinct crimes, that is to say, the crime of false representation, alleged to have been committed by the petitioner on three distinct occasions in violation of § 468 of the Penal Code of Porto Rico. It is alleged that the petitioner immediately filed pleas to the jurisdiction of the said Insular district court of San Juan, in which he claimed that said last-named court was without jurisdiction over the petitioner and ought to proceed no further upon the charge or indictment against the petitioner for false representation, based upon the fact that the petitioner was not extradited to respond for this charge or an indictment of that nature, but to respond only for the charge of embezzlement. This plea was overruled by the Insular district court of San Juan, a trial was

had, resulting in the conviction of the petitioner, whereupon he applied to the supreme court of Porto Rico, and this court on April 30, 1924, sustained said conviction by a decision of the majority of the judges of said court, according to the allegations in the petition.

It is therefore claimed by the petitioner, that, pursuant to the decision of the supreme court which sustains the conviction of the petitioner on the charge of false representation, the petitioner has been detained and imprisoned unjustly and unlawfully by the marshal of the district court of San Juan, and placed in the penitentiary at San Juan by virtue of a certain warrant of commitment, a copy of which is attached to the petition and marked exhibit A.

Counsel for Collado claims that his detention and imprisonment are illegal for three distinct reasons:—First, because it is in violation of the Constitution of the United States; second, because it is in violation of the treaty or treaties between the United States and the Republic of France; and third, because it is in violation of § 5275 of the Revised Statutes of the United States, Comp. Stat. § 10,121, 3 Fed. Stat. Anno. 2d ed. p. 283. Whereupon the said Collado asks this Federal court to release him from his imprisonment by means of a writ of habeas corpus.

This court, pending argument of this matter, by consent of the parties interested and without prejudice to the rights of either of them, released Collado on bail, and thereafter on May 16, 1924, a return to the writ was filed which sets forth that Collado was placed in custody on May 7, 1924, by an order of the Insular district court of San Juan in compliance with a sentence which had been imposed upon him on March 30, 1922,

which judgment and sentence were affirmed by the supreme court of Porto Rico on April 30, 1924. Attached to the return are a certified copy of the judgment which had been rendered by the Insular district court of San Juan, and also a certified copy of the judgment of the supreme court of Porto Rico. It is further alleged in said return that the said Collado was not surrendered by the Republic of France in compliance with the terms of any of the treaties existing between the United States of America and the said Republic of France, but, on the contrary, alleges that the said Collado voluntarily came to Porto Rico from the Republic of France after he had been arrested at the request of the authorities of the United States government, and that he then and there, on or about November 17, 1920, expressly renounced any right and privileges and protection which he might have had under the existing treaties. It is further claimed in and by said return that the judgment of conviction by the Insular district court of San Juan and its affirmance by the supreme court of Porto Rico do not violate the provisions of any Federal statute, or any treaty, or any provision of the Constitution of the United States; on the contrary, it is alleged that the marshal of the Insular district court of San Juan holds the said Collado under and by virtue of the authority vested in him in his official capacity in obedience to the orders of the courts of Porto Rico, and by virtue of no other authority, except as set forth in said return.

In the argument of this case counsel for the people of Porto Rico, representing the marshal of the Insular district court of San Juan, submitted two propositions of law, with one of which I am in complete accord, but not so with respect to the second. The first proposition is that this Federal court ought not to

interfere by means of a habeas corpus proceeding with any judgment of the supreme court of Porto Rico unless the right of the petitioner to relief is exceedingly clear. The second proposition is that this Federal court should show greater consideration to the judgments and sentences and decrees of the supreme court of Porto Rico than a Federal court sitting in Massachusetts or in Maryland would have for the judgments, sentences, and decrees of the supreme courts of those respective states; the reason being that the members of the supreme court of Porto Rico are appointed by the President of the United States, the same high power appointing the judge of the Federal court in Porto Rico; whereas, the President of the United States has nothing whatever to do with the selection or election or appointment of the members of the supreme courts of the various states of the Union.

If I were to adopt the second proposition submitted by the able counsel representing the respondent in the present case, it would be in effect holding that the supreme court of Porto Rico is entitled to less interference by a Federal court while it remains an unincorporated territory of the United States than such court shall be entitled to receive after the status of Porto Rico shall be elevated to statehood. To this proposition I cannot accede. It seems plain to me that the rights of a litigant coming into the Federal court of Porto Rico under existing conditions, claiming that his constitutional rights or his rights under a treaty between the United States and any foreign power have been infringed or disregarded, are exactly the same to-day as if Porto Rico were already a state of the Union. The fact that the appointing power of the justices of the supreme court of Porto Rico and of the judge who presides

over the Federal court in Porto Rico is identical, should in no way affect the decision of a case like this.

A very careful analysis by me has been made of the decision which was rendered April 30, 1924, by the supreme court of Porto Rico, the opinion having been delivered by the Honorable Chief Justice of that court, in which two other justices of the court concurred. This opinion is one of peculiar interest. The copy which has been certified to me consists of some fourteen pages, and in the opening of the opinion there is a declaration to the effect that the court has considered the interesting question of extradition in all of its details, and has reached a conclusion adverse to the claim of Collado, on the ground that it appears that in accordance with the facts, the law, and the jurisprudence, Collado lost all the rights now asserted by him when he surrendered himself voluntarily in France. If the supreme court of Porto Rico, in its decision, stopped at this point and affirmed the judgment of the trial court without any further discussion, there would clearly be submitted to this court the question of the validity or invalidity of the paper which Collado signed in France while he was under arrest. But a complete examination of the decision of the supreme court of Porto Rico discloses that when Collado was brought back to Porto Rico and the indictment for embezzlement was dismissed, he was shortly thereafter placed upon trial to answer a fresh indictment for the offense of false representation. This procedure, unquestionably, was in direct conflict with the doctrine established by the United States Supreme Court in the leading case of United States v. Rauscher, reported in 119 U. S. 407, 30 L. ed. 425, 7 Sup. Ct. Rep. 234, 6 Am. Crim. Rep. 222. But we must go farther to reach a proper decision of the present

proceeding. It is admitted that when Collado was placed upon trial to answer this fresh indictment for false representation the presiding judge was the Honorable Luis Campillo. After the conviction by the jury, Judge Campillo left Porto Rico and the motion for a new trial was submitted to his successor, the Honorable Charles E. Foote, who is the present judge of the Insular district court for San Juan, Section One. Judge Foote denied the motion for a new trial and signed the bill of exceptions which was submitted to him by counsel for Collado. By means of that bill of exceptions the matter was carried to the supreme court of Porto Rico from the Insular district court of San Juan. The signature of Judge Foote to the bill of exceptions was placed there by stipulation of the parties. The supreme court distinctly and emphatically holds that Judge Foote was absolutely without authority to sign the bill of exceptions, because § 298 of the Code of Criminal Procedure, which controls the Insular courts in Porto Rico, requires that the bill of exceptions in a criminal case must be signed either by the judge who actually presided at the trial, or by some justice of the supreme court of Porto Rico. It is only fair to say that the counsel who signed the stipulation and who represented Collado when he had his trial before the jury is not the same counsel representing Collado in the present habeas corpus proceeding. The decision of the supreme court of Porto Rico rendered, as aforesaid, on April 30, 1924, is plainly to the effect that the matter was improperly carried to the supreme court, so that this high tribunal was without power to entertain the appeal, as a result of which the appeal itself was dismissed, the judgment of the lower court allowed to stand, and everything in the decision of the supreme court to the effect that Collado had waived his rights by the

paper which he signed in France becomes nothing but obiter. dictum.

After a careful study of this entire matter, I am satisfied that it is my duty to dismiss the present proceeding, because there are elements in this case which fundamentally are so identical with the proceedings in the famous Craig Case as to require a denial of the relief which Collado seeks. A brief outline of the Craig litigation will explain the decision reached by me.

In March, 1920, the Honorable Julius M. Mayer, who was then United States district judge in New York city, in a very able opinion overruled a demurrer which had been filed by the counsel for Craig to an information charging Craig with contempt of court. This opinion of Judge Mayer is reported in 266 Fed. 230. Later Judge Mayer found that Craig was guilty of contempt and decided that Craig must make reparation or be punished, the second opinion of Judge Mayer being reported in 279 Fed. 900. Still later Craig was sentenced by Judge Mayer to serve sixty days in jail, and shortly thereafter he obtained from the Honorable Martin T. Manton, one of the judges of the circuit court of appeals in New York city, the granting of a petition for his discharge by means of a writ of habeas corpus. Judge Manton's opinion is reported in 274 Fed. 177. The United States district attorney was dissatisfied with the ruling by Judge Manton and took an appeal which was heard before three judges in New York city, Mr. Circuit Judge Rogers and Mr. Circuit Judge Hough and Mr. District Judge Learned Hand. The two first named agreed that Judge Manton had erred and reversed him, Judge Learned Hand dissenting, opinions being written by each of the three judges sitting and are reported in 282 Fed. 138–161. These three opinions are

full of interest, but I will not lengthen the present decision of this Court by quoting from them at length. It is sufficient to say that after this decision by the circuit court of appeals in New York city, Craig carried the matter by certiorari to the Supreme Court of the United States, and a decision was reached there on November 19, 1923, reported in 263 U. S. 255, 68 L. ed. 293, 44 Sup. Ct. Rep. 103. The decision of the circuit court of appeals was affirmed, and Craig's friends induced the President of the United States to remit the sentence which had been imposed upon Craig by Judge Mayer.

Incidentally it may be remarked that the power of the President to remit this sentence has been questioned in a similar case arising in Chicago, where a party by the name of Grossman had been found guilty of contempt of court and had received a remission of sentence from the President of the United States, and the Federal district judges in Chicago have refused to recognize the action of the President, and the question of the validity or invalidity of the President's order is now pending before the United States Supreme Court for decision.

Coming back once more to the decision of the United States Supreme Court in the Craig Case, it is distinctly held that in an ordinary contempt proceeding a Federal district judge possesses jurisdiction to decide whether the proof submitted establishes an offense within the meaning of the statute and whether the respondent is guilty as charged; also that where an order follows, sentencing the accused to imprisonment, such order is reviewable by appeal and not by habeas corpus, and that the procedure of habeas corpus cannot be used as a substitute for appeal in the absence of exceptional circumstances. The opinion is written by Mr. Justice McReynolds. There is a short con-

curring opinion written by Chief Justice Taft. He plainly states on page 279 that Craig and his counsel, relying upon a decision of the Supreme Court of the United States made years ago when the provisions of the statute were different from those now in force, thought that if they could secure a decision from a single circuit judge releasing the petitioner by means of a writ of habeas corpus, no appeal would lie from his decision, and therefore no resort to appellate courts could be had by the government. But Chief Justice Taft points out that Craig and his counsel were mistaken in supposing that no appeal would lie from the decision of the single judge on the question of the jurisdiction of the trial court. The United States government proceeded to prosecute its own appeal, and the only issue presented in that review was the matter of the jurisdiction of the trial court, and this was upheld by the circuit court of appeals, and also by the Supreme Court of the United States. I will quote one sentence from the concurring opinion of Chief Justice Taft: "In this way, the petitioner and his counsel threw away opportunity for a review of the case on its merits in the circuit court of appeals and in this court in their purpose to make a short cut and secure final release through the act of a single judge. This is the situation the petitioner finds himself in and we are without power to relieve him."

Now it seems to me that when Collado had been convicted by Judge Campillo, and the statutes of Porto Rico not only authorized but required counsel for Collado to appeal to the supreme court of Porto Rico by means of a bill of exceptions signed by one of the justices of the supreme court of Porto Rico, and failing to do so obtained the signature of Judge Foote, which made the paper null and void, they threw away the opportunity which

they had for a review of the merits, surely it cannot be argued for a moment that a Federal district judge in Porto Rico has greater power to interfere with judgments, sentences and decrees of the supreme court of Porto Rico than has the Supreme Court of the United States to interfere with the sentences, judgments, and decrees of the Federal circuit court of appeals in New York city. To express the matter in another way; if Chief Justice Taft and his associates upon the Supreme Court of the United States found themselves without power or authority to afford relief to Craig, by reason of the error in procedure made by Craig and his counsel, it would be presumptuous in the extreme for a Federal district judge in Porto Rico to afford relief by means of habeas corpus to a petitioner, who, by his own error in procedure, and by his own neglect of the plain statutory provisions in force in Porto Rico, had deprived himself of his right to a review of a conviction for a felony.

In conclusion, it must be noted that if I were to grant to Collado, by means of the present writ of habeas corpus, his discharge from the sentence imposed upon him, a most dangerous precedent might be established. Men charged with crimes in no way triable before the Federal court, and finding themselves convicted, and making claims that some constitutional right of theirs had been impaired, might purposely adopt the wrong procedure, so as to deprive the supreme court of Porto Rico of the power to review the conviction upon the merits, and then make application to this court for relief by means of a petition for habeas corpus.

After a thorough consideration of the entire matter, I am satisfied that I possess no power whatever to discuss the question of the validity or invalidity of the paper which Collado

signed in France, and that it is my duty to dismiss the present petition, this ruling being based upon the sole ground that Collado had an opportunity to have his case reviewed by the supreme court of Porto Rico on the merits, and threw away that opportunity by his own act.

The petition is dismissed, and the petitioner Collado is remanded to the custody of the marshal of the Insular district court of San Juan.

To this order and opinion counsel for Enrique Collado excepts.

Done and Ordered in open court at San Juan, Porto Rico this 25th day of June, 1924.