No. 326, Misc.   LEVITON ET AL. *v.* UNITED STATES.
MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS are of the opinion certiorari should be granted. Memorandum filed by MR. JUSTICE FRANKFURTER. *Sidney Feldshuh* for Leviton; *John Logan O'Donnell* for Markowitz; and *David E. Scoll* for Blumenfeld, petitioners. *Solicitor General Perlman, Assistant Attorney General McInerney, Beatrice Rosenberg* and *Murry Lee Randall* for the United States.

Memorandum of MR. JUSTICE FRANKFURTER.

This seems to me to be another instance where it becomes helpful to an understanding of the exercise of the Court's discretionary jurisdiction in granting or denying certiorari, to indicate the kind of question that did not commend itself to at least four Justices as appropriate for review by this Court. Several questions were raised by the petition for certiorari. It suffices to indicate the nature of only one, which can be most helpfully conveyed by giving the views of the Court of Appeals and of the dissenting opinion. 193 F. 2d 848.

Speaking for that court, Judge Clark, with the concurrence of Chief Judge Swan, stated the matter thus:

"The third incident involved a newspaper article in the New York Times, December 14, 1949. This account falsely reported that the indictment covered some $9,500 worth of barbed wire; that Field, a Customs Bureau visa clerk who had received the eleventh and last fraudulent export declaration in this case and who was an important witness for the government, had been offered a $200 bribe by Leviton to suppress this evidence (Leviton had in fact purchased $44 worth of clothing as a gift for Field); and that the defendants were part of a much larger 'ring.' A copy of the newspaper containing the article was found in

the jury room. We do not think, however, that such a report, erroneous as it was, made a fair trial impossible. The judge gave very explicit instructions that the contents of the article were to be disregarded and went on to point out how the offenses set forth in the indictment differed from those described in the article. Trial by newspaper may be unfortunate, but it is not new and, unless the court accepts the standard judicial hypothesis that cautioning instructions are effective, criminal trials in the large metropolitan centers may well prove impossible. United States v. Keegan, supra, 2 Cir., 141 F.2d at page 258. Citations of the reporting media for contempt by publication are rare and the Supreme Court has stated that their activities in reporting criminal trials do not deprive the accused of a fair trial unless there is a 'clear and present danger' that such will result. See Ex parte Craig, 2 Cir., 282 F. 138, affirmed 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293; Baltimore Radio Show v. State, Md., 67 A.2d 497, certiorari denied, with opinion by Frankfurter, J., Maryland v. Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562; Note, 59 Yale L. J. 534. Such was not the showing here." *Id.*, at 857.

Judge Frank in dissent took this view of the question:

"On the second day of trial, the prosecutor held a 'press conference' after court. He told the newspaper reporters of matters which (so he later advised the court) they promised not to print. In the next morning's New York Times, there appeared a story, told with typical journalistic vigor, about 'export racketeers' who 'poured $500,000 of commodities into European and South African black markets.' The significance of the newspaper story was this: It professed to recount the testimony of a witness that Leviton, over the phone, had offered him a $200 bribe to withdraw from customs files a fraudulent declara-

948

tion. The article detailed the attempted bribe, the meeting place for its completion and the substitution of a $44 gift of shirts for the originally-offered $200. This most damaging story of the $200 bribe is wholly unsupported by the evidence. Accordingly, had the prosecutor written letters to the jurors retelling this story, of course we would reverse. He did the equivalent. For it is outrightly conceded that the Times reporter learned this tale from the prosecutor, and that four copies of the newspaper article were found in the jury-room on the third day of the trial.

"My colleagues admit that 'trial by newspaper' is unfortunate. But they dismiss it as an unavoidable curse of metropolitan living (like, I suppose, crowded subways). They rely on the old 'ritualistic admonition' to purge the record. The futility of that sort of exorcism is notorious. As I have elsewhere observed, it is like the Mark Twain story of the little boy who was told to stand in a corner and not to think of a white elephant. Justice Jackson, in his concurring opinion in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790, said that, 'The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction. See Skidmore v. Baltimore & Ohio R. Co., 2 Cir., 167 F.2d 54.' Cf. People v. Carborano, 301 N.Y. 39, 42–43, 92 N.E.2d 871; People v. Robinson, 273 N.Y. 438, 445–446, 8 N.E. 2d 25.

"I think the technique particularly objectionable and ineffective here for two reasons. (1) The story was a direct result of confidential disclosures by a government officer, the prosecutor, of not-in-the-record matters, and was not merely the accidental garbling of a confused reporter. (2) The article was no statement of opinion or editorial, but a professed account of court-room evidence

calculated to confuse and mislead juror-readers. In such cases, courts recognize that, for all practical purposes, defendants are deprived of their constitutional rights to confront witnesses, cross-examine and contradict them, and object to evidence as irrelevant or incompetent—in short all the elements of a fair trial. Last year, two Supreme Court Justices advocated in a concurring opinion the reversal of a conviction upon the ground that an officer of the court had released to the local press information about confessions of the defendants never introduced at the trial. Shepherd v. Florida, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740.

"I cannot see the relevance here of cases, to which my colleagues refer, applying the 'clear and present danger' test to contempts by newspapers for articles relative to pending trials (incidentally, all non-jury trials). That test has been employed only when the newspaper itself was threatened with criminal punishment for the publication. It certainly should not be carried over to a case like this one where convicted defendants may well have been prejudiced by a newspaper article. In such a case, the 'clear and present danger' test would bar reversals for all but the most flagrantly scurrilous or deceptive newspaper attacks. Courts, in reversing convictions for trial-by-newspaper, have always recognized that printed matter may be prejudicial enough to require a new trial without evidencing so depraved an attitude of the publisher as to support a contempt citation. United States v. Ogden, D.C.E.D. Pa., 105 F. 371, 374.

"In the instant case, the newspaper and reporter, if cited for contempt, would doubtless urge as a defense that the story came from the prosecutor, an 'officer of the court.' That very fact, however, underscores the gravity of the error here." *Id.*, at 865–866.